**In re Kimberly CALDERON.**

**No. 12–02–00228–CV.**

Court of Appeals of Texas, Tyler.

Feb. 5, 2003.

Carole W. Clark, pro se.

John E. Freeman, Deborah J. Race, Tyler, for Real Party In Interest.

Pascual Madrigal, San Antonio, for Relator.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION ON MOTION FOR REHEARING

JAMES T. WORTHEN, Chief Justice.

The real party in interest, David Holiday ("Holiday"), filed a motion for rehearing. Pending our disposition of Holiday's motion, we stayed our order conditionally granting the writ. We deny the motion for rehearing, and the stay of our prior order is lifted. However, our opinion of October 23, 2002 is withdrawn, and the following opinion is substituted in its place.

Kimberly Calderon ("Calderon") brings this petition for writ of mandamus complaining of an order denying her motion to transfer venue filed pursuant to section 155.201 of the Texas Family Code. We conditionally grant the writ.

### BACKGROUND

Holiday and Calderon were divorced in 1993 in Smith County, Texas. Two children were born to the marriage. Since 1998, the children have resided with Calderon in San Antonio, Texas, which is in Bexar County. The children are minors, and the 321st District Court of Smith County has continuing, exclusive jurisdiction over matters relating to the children.[1]

On February 23, 1999, Calderon filed a motion to transfer venue on the grounds that she and the children had resided in Bexar County for more than six months. Holiday filed a response alleging that Calderon had, on the same date, urged an oral motion to modify and sought temporary orders without stating that a motion to transfer was being filed contemporaneously. Therefore, Holiday concluded, the motion to transfer venue was not timely filed. He did not deny that the children had resided in Bexar County for more than six months. A notation on the court's docket sheet dated July 6, 1999 reflects that "[a] mtn to transfer has been filed and needs a hearing." The next entry on the docket sheet states that the motion to transfer venue was heard on July 23, 1999 and denied.

On April 17, 2000, Holiday and Calderon entered into a mediated settlement agreement ("MSA") to resolve the litigation between them. The MSA primarily relates to their parental rights and duties, but also provides that jurisdiction will remain in Smith County for three years. On October 24, 2000, the trial court signed an

---

1. A court that renders a final order in a suit affecting the parent-child relationship acquires continuing, exclusive jurisdiction over matters pertaining to the children. TEX. FAM. CODE ANN. § 155.001 (Vernon 2002).

order approving the MSA and incorporating its terms. The order contains the following provision: "The Court further finds that jurisdiction and venue shall remain in Smith County, Texas for a period of three (3) years from the date of entry of this Order." The order also states that the residence of the minor children is in San Antonio.

On May 28, 2002, Calderon filed a motion to transfer venue from Smith County to Bexar County. Approximately one week later, Calderon filed a motion in Smith County seeking modification of the trial court's October 24 order. Holiday filed an affidavit controverting Calderon's motion to transfer. In his affidavit, Holiday contends that Calderon is not entitled to the transfer because paragraph 8 of the MSA (the "MSA provision") expressly states that continuing jurisdiction of the children will remain in Smith County for three years. Holiday also points out that the MSA provision is incorporated into the trial court's October 24 order.

Calderon requested that the trial court rule on her motion to transfer without a hearing. The trial court denied Calderon's request and on August 15, after a hearing, denied Calderon's motion. Calderon filed her petition for writ of mandamus asking this court to direct the trial court to vacate its order denying the motion to transfer and to transfer the proceedings to Bexar County. Calderon also asks this court to impose sanctions against Holiday pursuant to Rule 52.11 of the Texas Rules of Appellate Procedure.

### AVAILABILITY OF MANDAMUS

■ Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

■ Transferring a case to a county where the child has resided for more than six months is a mandatory ministerial duty under section 155.201 of the Texas Family Code.[2] *Bollard v. Berchelmann*, 921 S.W.2d 861, 863 (Tex.App.San Antonio 1996, no writ) (citing *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987), which refers to section 11.06[3]); *see* TEX. FAM.CODE ANN. § 155.201(b) (Vernon 2002). An order denying a motion to transfer the proceeding is not subject to interlocutory appeal. TEX. FAM.CODE ANN. § 155.204(e) (Vernon 2002). Remedy by regular appeal, though available, is frequently inadequate to protect the rights of parents and children to a trial in a particular venue. *Proffer*, 734 S.W.2d at 673. Therefore, mandamus is available to compel mandatory transfer in a SAPCR. *Id.* at 672; *In re Sanchez*, 1 S.W.3d 912, 914 (Tex.App.Waco 1999, orig. proceeding).

### ABUSE OF DISCRETION

Calderon argues that the trial court had no discretion to deny her motion to transfer because it is undisputed that the children have resided in Bexar County for more than six months. She further contends that the MSA provision cannot serve as a defense to her motion because the

---

2. All statutory references are to the current version of the Texas Family Code unless otherwise indicated.

3. Section 11.06 is the predecessor to section 155.201.

mandatory transfer requirement of section 155.201 cannot be negated by contract. Holiday maintains that the trial court properly denied Calderon's motion to transfer because (1) section 153.0071 of the Texas Family Code allows the parties to a mediated settlement agreement in a suit affecting the parent-child relationship ("SAPCR") to make an agreement that is contrary to section 155.201; (2) Calderon, by "clear overt acts," waived her right to contest the trial court's order denying her motion to transfer; and (3) Calderon is estopped and/or barred from attacking the MSA provision.

### Relationship Between Family Code Sections 155.201 and 153.0071

■ Section 155.201(b) of the Texas Family Code provides as follows:

> (b) If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court *shall* transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer.

TEX. FAM.CODE ANN. § 155.201(b) (emphasis added). The Texas Supreme Court has held that the use of the word "shall" indicates that this statute is mandatory. *Cassidy v. Fuller*, 568 S.W.2d 845, 847 (Tex. 1978) (referring to section 11.06 [4]). Therefore, a trial court has no discretion but to transfer the proceeding if the child has resided in another county for six months or more. *E.g., Proffer*, 734 S.W.2d at 673; *In re Powell*, 79 S.W.3d 814, 816 (Tex.App. Fort Worth 2002, orig. proceeding); *Sanchez*, 1 S.W.3d at 914.

In support of her argument that the MSA provision does not control over the mandatory transfer requirement of section 155.201, Calderon calls our attention to the supreme court's decision in *Leonard v. Paxson*, 654 S.W.2d 440 (Tex.1983). In *Leonard*, the relator and her former husband entered into an agreement incident to divorce, which was approved by the trial court and incorporated into the final divorce decree. The agreement provided that "[a]ll acts contemplated by this Agreement shall be performed in El Paso County, Texas, and all sums of money payable under this Agreement shall be payable in El Paso, Texas."

The next year, the relator instituted a proceeding to modify the child support provisions of the divorce decree. In addition, she filed a motion to transfer the proceeding to the county where her children had resided for more than six months prior to the filing of the motion to modify. Her former husband contested the motion to transfer alleging that venue was proper in El Paso County under the venue provision of the agreement. The trial court agreed and denied the motion to transfer. The relator sought a writ of mandamus from the supreme court.

In reviewing the lower court's action, the supreme court concluded that, despite the agreement of the parties, the trial court had a mandatory duty to transfer the proceeding. *Id.* at 441. In so holding, the court noted that "the fixing of venue by contract, except in such instances as permitted by Article 1995, § 5 [creating an exception to the general venue statute when a person has contracted in writing to perform an obligation in a particular county] is invalid and cannot be the subject of private contract." *Id.* (citing *Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex.1972)).

Although the agreement in *Leonard* stated that all acts contemplated by the agreement, including the payment of mon-

---

4. *See* n. 2.

ey, were performable in El Paso County, the relator did not allege that her former husband had breached the agreement nor did she seek a money judgment for support payments due under the terms of the agreement. Instead, the relator sought to modify the agreement's child support provisions. Consequently, the underlying proceeding was a SAPCR and not a suit for breach of contract. As such, article 1995, section 5 was inapplicable because the venue provisions of the Family Code remove a SAPCR from the operation of the general venue statute. *Id.* Therefore, the mandatory venue and transfer provisions of the Family Code controlled, *id.* at 441–42, and the attempt to negate those provisions by contract was void.[5] *See id.* The court reasoned that "[t]o hold otherwise would defeat the legislature's intent that matters affecting the parent-child relationship be heard in the county where the child resides, and would promote forum shopping by contract." *Id.* at 442 (citing *Cassidy,* 568 S.W.2d at 847).

Holiday contends that *Leonard* does not control here. To support his position, he first relies on section 153.0071, which provides that, in a SAPCR, a party is entitled to judgment on a mediated settlement agreement "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law" if the agreement

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM.CODE ANN. § 153.0071(d), (e) (Vernon 2002).

Holiday points out that section 153.0071 incorporates the strong public policy favoring alternative dispute resolution in family law cases in Texas. Consequently, he contends, a venue provision in a mediated settlement agreement is enforceable even if the provision contravenes the mandatory transfer requirement of section 155.201, provided the parties comply with the requirements of subsection (d).[6] Thus, Holiday argues, in effect, that section 153.0071(e) affords parties wider latitude in a mediated settlement agreement than is available in an agreement reached outside of mediation. Although Holiday cites no case addressing his interpretation of subsection (e), two recent cases provide guidance on the issue.

In *Cayan v. Cayan,* 38 S.W.3d 161 (Tex.App.Houston [14th Dist.] 2000, pet. denied), the court addressed whether the trial court erred in signing a divorce decree based on a mediated settlement agreement that one party had repudiated prior to the entry of judgment. In deciding the issue, the court applied section

---

**5.** Quoting *Evans,* 477 S.W.2d at 537, the court in *Leonard* held that an attempt to fix venue by contract is "invalid" except as permitted by other law. Although neither *Evans* nor *Leonard* uses the term "void," *Evans* relies heavily on *International Travelers' Ass'n v. Branum,* 109 Tex. 543, 212 S.W. 630 (Tex. 1919) in reaching its result. Later supreme court opinions, as well as opinions from a number of courts of appeals, cite *Branum* for the proposition that contracts which change the law relating to venue are void. *E.g.,*

*Simpson v. McDonald,* 142 Tex. 444, 451, 179 S.W.2d 239, 243 (1944); *Ziegelmeyer v. Pelphrey,* 133 Tex. 73, 75–76, 125 S.W.2d 1038, 1040 (1939); *Bristol–Myers Squibb Co. v. Goldston,* 957 S.W.2d 671, 674 (Tex.App.-Fort Worth 1997, writ denied); *Jeter–Millar Co. v. Kasch Bros., Inc.,* 466 S.W.2d 598, 600 (Tex. Civ.App.-Eastland 1971, no writ).

**6.** Calderon does not contend that the agreement fails to comply with these requirements.

6.602(c), which is identical to section 153.0071(e).[7] In its discussion, the court noted that prior to the enactment of section 153.0071, which formerly applied to mediated settlement agreements in divorce proceedings, settlement agreements in family law cases were governed by Rule 11 of the Texas Rules of Civil Procedure, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law. *See id.* at 165 n. 6. As a result, the agreements were enforceable in the same manner as other written contracts, and a separate suit for enforcement was required if one party withdrew consent prior to the entry of judgment on the agreement. *See id.* at 165–66. The plain language of section 6.602(c), however, reflects that the legislature intended to eliminate the requirement of enforcement by a separate suit. *See id.* at 166. The phrase "notwithstanding Rule 11, Texas Rules of Civil Procedure or another rule of law" reflects this intent and refers to the rules of law that require a separate suit for enforcement. *See id.* at 165–66. Accordingly, the court held that section 6.602(c) entitles a party to judgment on a mediated settlement agreement that meets the statutory requirements for validity, even where one party withdraws consent to the agreement, without a separate suit for enforcement. *See id.* at 165.

In the second case, *Boyd v. Boyd,* the trial court denied a motion to enforce a mediated settlement agreement after determining that the agreement did not include substantial community assets. On appeal, the appellant argued that the trial court had no discretion to deny his motion to enforce the agreement because the agreement complied with the requirements of section 6.602. *Boyd v. Boyd,* 67 S.W.3d 398, 401 (Tex.App.Fort Worth 2002, no pet.). The Fort Worth Court of Appeals

disagreed and held that "the phrase 'notwithstanding rule 11 [. . .] or another rule of law' does not require a trial court to enforce a mediated settlement agreement simply because it complies with [the requirements for validity set out in section 6.602(b) ] . . . ." *Id.* at 403. The court reasoned that the appellant's argument, when taken to its logical end, could require "enforcement of an agreement that was illegal or that was procured by fraud, duress, coercion, or other dishonest means," which would be "an absurd result" and one not intended by the legislature. *Id.* Adopting a less restrictive interpretation, the court held that the quoted phrase means "the requirements of rule 11 and the common law that ordinarily apply to the enforcement of settlement agreements do not apply to mediated settlement agreements in divorce proceedings, if the agreements meet the three requirements listed in section 6.602(b)." *Id.*

We agree with the holdings in *Cayan* and *Boyd* that the "another rule of law" language in section 6.602(b) relates to the manner of enforcing a mediated settlement agreement. Because the legislature included the same language in section 153.0071(e), we conclude that the two provisions have the same meaning. Consequently, we hold that the phrase "notwithstanding Rule 11, Texas Rules of Procedure or another rule of law" in section 153.0071(e) means that Rule 11, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law, insofar as they apply to the enforcement of settlement agreements, do not apply to the enforcement of a mediated settlement agreement in a SAPCR if the agreement meets the requirements of section 153.0071(d). Furthermore, we find no indication in section 153.0071(e) or any

---

7. Section 6.602 sets out the mediation procedures in a divorce proceeding.

other Family Code provision that the legislature, by adopting a policy favoring alternative dispute resolution, intended to abrogate its longstanding policy, recognized in *Leonard,* that "matters affecting the parent-child relationship be heard in the county where the child resides...." *See Leonard,* 654 S.W.2d at 442 (citing *Cassidy,* 568 S.W.2d at 847). We therefore conclude that *Leonard* is applicable here.

■ Holiday next contends that even if we do not read section 153.0071(e) as broadly as he suggests, the MSA provision is valid because the facts in *Leonard* are distinguishable from those in the case at bar. He argues that *Evans,* relied upon by the court in *Leonard,* stands for the proposition that "an *advance agreement* about venue may not contravene the statutory scheme for fixing venue." *Evans,* 477 S.W.2d at 536 (emphasis added). Because Calderon signed the MSA at a time when she already had a right to move to transfer the matter to Bexar County, Holiday argues that the MSA provision cannot be considered an "advance agreement" and the holding in *Leonard* is inapposite. We disagree with Holiday's interpretation of the holding in *Evans.*

The language quoted by Holiday summarizes the holding in *Branum,* which was cited in *Evans.* However, one of the authorities relied upon by the court in *Branum* states that "[a person] can not ... bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented." *Branum,* 109 Tex. at 548, 212 S.W. at 632 (citation omitted). We interpret this language and the resulting holding in *Branum* to prohibit venue agreements made in advance of *the controversy.* This interpretation is consistent with the discussion in *Evans* relating to venue

agreements made "in advance of trial," *Evans,* 477 S.W.2d at 537, and with the court of civil appeals' conclusion that the authorities quoted "[in *Branum* ] ... indicate that [the decision] rests on the broader principle of public policy that a person ought not to be permitted to contract away procedural rights before any controversy arises." *Fidelity Union Life Ins. Co. v. Evans,* 468 S.W.2d 869, 871–72 (Tex.Civ.App.Dallas 1971, writ ref'd n.r.e.) (citing *Branum* and holding that "any contract to change the law with reference thereto before any controversy has arisen 'is utterly against public policy' ").

The MSA provision in this case, if enforced, restricts Calderon's right to mandatory transfer as to any controversy arising within three years from the date of the MSA. Thus, the MSA provision relates only to future controversies and falls squarely within the holding in *Evans* as applied in *Leonard.*

### Waiver and Estoppel

■ Holiday next contends that the MSA provision constitutes a valid express waiver of Calderon's right to move for a transfer within the three-year period specified in the MSA. More particularly, he argues that venue, unlike jurisdiction, is a privilege that can be waived. Further, he maintains that the mandatory transfer requirement of section 155.201(b) can be waived by failing to timely file a motion to transfer. *See* Tex. Fam.Code Ann. 155.201(b) (court must transfer if motion is timely). We agree that venue is a procedural right which can be waived. We do not agree, however, that the MSA provision constitutes such a waiver.

■ Under the holding in *Leonard,* any attempt to supplant the mandatory transfer provision applicable in a SAPCR is void. *See Leonard,* 654 S.W.2d at 441–42. The term "void" means "of no legal

effect" or "null." BLACK'S LAW DICTIONARY 1568 (7th ed.1999). Therefore, the provision cannot be an effective contractual waiver of Calderon's right to the transfer required by section 155.201. *See McCullough*, 470 S.W.2d at 212. Furthermore, a settlement agreement attempting to change venue contrary to the statutory law of the state cannot constitute a waiver of venue. *Johnson v. U.S. Industries, Inc.*, 469 S.W.2d 652, 654 (Tex.Civ.App.Eastland 1971, no writ). In a SAPCR, venue is proper in the court of continuing jurisdiction unless a transfer is requested. If the child has resided in another county for more than six months and a motion to transfer is timely filed, the transfer of the proceeding is mandatory. *See* TEX. FAM. CODE ANN. §§ 155.001, 155.201(b). The MSA provision contravenes this statutory scheme, and in so doing, "defeats the legislature's intent that matters affecting the parent-child relationship be heard in the county where the child resides...." *See Leonard*, 654 S.W.2d at 442. Consequently, we conclude that the MSA provision is not a valid express waiver of venue.

 Holiday also contends that Calderon is estopped from asserting the invalidity of the MSA provision because it would be unconscionable to allow Calderon to maintain a position inconsistent with one in which she acquiesced or from which she accepted a benefit. A void agreement cannot be rendered enforceable by estoppel. *In re Kasschau*, 11 S.W.3d 305, 314 (Tex.App.Houston [14th Dist.] 1999, orig. proceeding). Therefore, Calderon is not estopped from asserting the provision's invalidity.

### Res Judicata and Collateral Estoppel

Finally, Holiday contends that the doctrines of res judicata and collateral estoppel prevent Calderon from relitigating venue in the instant case because the issue has already been decided based upon the same facts that presently exist.

 In general terms, res judicata is the generic term for a group of related concepts concerning the conclusive effect given final judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). This general doctrine of res judicata encompasses two distinct categories: (1) res judicata, or claim preclusion, and (2) collateral estoppel, or issue preclusion. *Id.* Holiday's argument relates to collateral estoppel.

 The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it "previously litigated and lost." *Quinney Elec., Inc. v. Kondos Entertainment, Inc.*, 988 S.W.2d 212, 213 (Tex.1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)). Thus, collateral estoppel precludes relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). More particularly, the doctrine extends only to those issues that were either expressly determined or necessarily determined in an adjudication and not to those matters which might have been, but were not, raised and adjudicated in the prior action. *Avila v. St. Luke's Lutheran Hospital*, 948 S.W.2d 841, 847 (Tex.App.San Antonio 1997, writ denied) (citing *Barr*, 837 S.W.2d at 628). Once an essential issue is actually litigated, that issue is conclusive in a subsequent action between the same parties. *Van Dyke*, 697 S.W.2d at 384. Collateral estoppel applies whether the issue is determined by agreement or by the court. *Avila*, 948 S.W.2d at 847. However, due process requires that collateral estoppel operate only against persons who have had

their "day in court," either as a party to the prior suit or as a privy. *Id.*

Holiday maintains that Calderon has had her "day in court" on the venue issue because she (1) urged the February 23, 1999 motion to modify and sought temporary orders; (2) urged the February 23, 1999 motion to transfer; (3) received an unfavorable ruling on the motion to transfer; (4) failed to file a mandamus proceeding relating to the denial of the motion to transfer; (5) entered into the MSA, which included a provision determining venue; and (6) failed to seek any review of the final judgment that was entered in accordance with the MSA. Calderon argues that Holiday has not shown that collateral estoppel is applicable. To resolve the issue, we must determine whether venue has been actually litigated.

■ Actual litigation occurs when an issue is properly raised, by the pleadings or otherwise, is submitted for determination, and is determined. *Rexrode v. Bazar*, 937 S.W.2d 614, 617 (Tex.App.Amarillo 1997, no writ) (citing *Van Dyke*, 697 S.W.2d at 384). In her 1999 motion to transfer, Calderon alleged that the children had resided in Bexar County for more than six months prior to the filing of the pending action and that venue was proper in Bexar County. The trial court did not sign a written order denying Calderon's motion or make a docket sheet notation indicating the grounds for denial. However, we note that in Holiday's response to the 1999 motion, he stated that "the Motion to Transfer filed by [Calderon] herein is untimely and has been waived." He did not deny Calderon's allegations that the children lived in Bexar County and that venue was proper in Bexar County. Therefore, the only disputed

issue, according to the record before us, was whether Calderon's motion was timely filed.[8] An issue is not actually litigated if it is raised by a material allegation of a party's pleading but is admitted, either explicitly or by virtue of a failure to deny, in a responsive pleading. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982). Because the only issue Holiday raised in his response to Calderon's motion was whether the motion was timely filed, we conclude that the trial court denied the motion as being untimely. Thus, the trial court did not determine the merits of the motion, and its denial of the motion did not preclude Calderon from raising the venue issue at a later date.

■ After the trial court's ruling on the 1999 motion to transfer, Calderon entered into an MSA that resolved the remaining issues in the pending litigation and included a provision relating to venue. Specifically, the MSA provision, as incorporated into the trial court's order, states that "jurisdiction and venue shall remain in Smith County, Texas for a period of three (3) years...." As explained above, once an essential issue is actually litigated, that issue is conclusive in a subsequent action between the same parties. *Van Dyke*, 697 S.W.2d at 384. However, an issue has not been actually litigated if its resolution was expressly made subject to future modification. *See Macurak v. Lutes*, No. 05–00–01901–CV, 2002 WL 1192106 (Tex.App.Dallas June 5, 2002, no pet.) (not designated for publication), 2002 Tex.App. LEXIS 4034, at *16 (collateral estoppel not applicable to provision of divorce decree to which parties agreed and which was subject to future modification by the further order of court or by agree-

---

8. The record in this proceeding does not include a transcript of the hearing on the 1999 motion.

ment of the parties). Here, the plain language of the M.S.A. § provision and resulting order reveals that the parties merely agreed to maintain the status quo as to jurisdiction and venue for three years. At the expiration of the three-year period, the issue would be subject to redetermination, either through litigation or another agreement. Consequently, the venue issue was not actually litigated, and the doctrine of collateral estoppel is inapplicable. *See id.*

### CONCLUSION

Based upon our review of the record and the foregoing analysis, we hold that the MSA provision fixing venue in Smith County is void. Consequently, the trial court had a mandatory duty to transfer the underlying proceeding to Bexar County and abused its discretion by denying Calderon's motion to transfer. Because Calderon does not have an adequate remedy by appeal, we conditionally grant mandamus relief. We trust that the trial court will vacate its order denying the motion to transfer and transfer this suit to Bexar County. The writ will issue only if it fails to do so. Calderon's request for sanctions is denied.

*Writ conditionally granted.*