Quicksilver

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-251-CV

QUICKSILVER RESOURCES, INC. APPELLANT

V.

CMS MARKETING SERVICES APPELLEE

AND TRADING COMPANY

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Quicksilver Resources, Inc. challenges a summary judgment and declaratory judgment rendered in favor of Appellee CMS Marketing Services and Trading Company.  The primary issues we address in this appeal are whether, under Michigan law, the inclusion of an express merger provision in a contract precludes the introduction of parol evidence concerning a prior verbal agreement and whether the legal construction of a contractual provision as a mere agreement to agree collaterally estops a party from challenging a different contractual provision set forth in a different contract between different parties.  Because we hold that Michigan law precludes the introduction of parol evidence to vary the terms of a written contract containing an express merger agreement, and because collateral estoppel is inapplicable when the issue presented is not the same as the issue previously litigated, we will reverse the trial court’s summary judgment on Quicksilver’s causes of action for breach of contract, breach of the UCC duties of good faith and fair dealing, fraud in the inducement, and recission.  We will remand these claims to the trial court. Because the summary judgment evidence conclusively establishes the existence of an express, written contract between Quicksilver and CMS, we will affirm the trial court’s summary judgment for CMS on Quicksilver’s unjust enrichment claim.

II.  Factual and Procedural Background

Quicksilver is a Fort Worth-based oil and natural gas exploration and production company.  After a Michigan company that purchased large quantities of natural gas from Quicksilver declared bankruptcy, Quicksilver began negotiations with CMS.  Following approximately a month of negotiations, on March 26, 1999, Quicksilver and CMS verbally agreed in a phone conversation that Quicksilver would sell and CMS would buy 10,000 mmbtu’s of natural gas per day for ten years at a minimum price of $2.47 per mmbtu, with the condition that the parties would share any “upside” equally.  This agreement was memorialized in a March 29, 1999 transaction confirmation letter from CMS to Quicksilver, which Quicksilver signed.  The parties subsequently reduced their agreement to writing, executing an industry-standard GISB Base Contract for Short-Term Sale and Purchase of Natural Gas that contained the following provision:

Quicksilver and CMS MST agree that if the subject gas supply can be scheduled/delivered (whether on the spot short-term or long-term basis) to derive additional value, that the parties shall share in such additional revenue on a 50%-50% basis.

The contract also contained a merger clause, providing that the contract superceded “any prior contracts, understandings and representations, whether oral or written.”
(footnote: 2)  The parties agreed that the contract would be governed by Michigan law. 

As the gas market surged, Quicksilver attempted to discuss pricing and the upside sharing clause with CMS.  Despite the increase in gas prices, CMS failed to share profits with Quicksilver under the upside sharing clause and refused to provide information to Quicksilver concerning any additional revenue obtained by CMS from the gas sold to it by Quicksilver.  Eventually, Quicksilver sued CMS for breach of contract, unjust enrichment, fraud in the inducement, breach of the UCC duties of good faith and fair dealing, and a declaratory judgment.  After suit was filed, CMS disclosed that prior to entering the agreement with Quicksilver it had negotiated a “back-to-back” financial hedge with respect to the gas covered by the Quicksilver contract, capping CMS’s effective financial recovery on the gas it purchased from Quicksilver at $2.54 per mmbtu, that is, at a profit of $0.07 per mmbtu. 

CMS answered Quicksilver’s suit, filed a counterclaim for a declaratory judgment, and eventually filed an amended motion for summary judgment on all of Quicksilver’s claims and on its own counterclaim for declaratory judgment. The trial court granted CMS’s motion for summary judgment and rendered a final judgment declaring that “CMS has not breached the gas purchase and sale agreement that is the subject of this lawsuit” and that “CMS is not required to pay any money to Quicksilver for the remaining term of such agreement beyond the fixed price of $2.47 per MMBTU of natural gas.”  Quicksilver perfected this appeal.

III.  Standard of Review
       

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
S.W. Elec. Power Co., 
73 S.W.3d at 215; 
Sci. Spectrum, Inc. v. Martinez
, 941 S.W.2d 910, 911 (Tex. 1997); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.  
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant's position will not be considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).  
The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

IV.  CMS’s Grounds For Summary Judgment
 

CMS’s amended motion for summary judgment sought summary judgment on Quicksilver’s claims for breach of contract, breach of the UCC duites of good faith and fair dealing, and declaratory judgment on the grounds that (1) these claims by Quicksilver were barred by collateral estoppel, and (2)  a transcript of a recorded March 26, 1999 phone conversation between the parties proved that CMS never agreed to the upside sharing clause and that the upside sharing clause was only an agreement to agree.  CMS sought summary judgment on Quicksilver’s claim for fraud in the inducement on the ground that CMS conclusively established Quicksilver’s lack of reasonable reliance.  CMS claimed that Quicksilver’s cause of action for unjust enrichment failed because a valid, express contract existed between the parties and that Quicksilver’s recission claim failed because a party cannot rescind a contract based solely upon its own mistake.  Quicksilver contends in its first and fifth through eighth issues that the trial court erred by granting summary judgment on any of these grounds.

A.  Collateral Estoppel

In another, different lawsuit, Quicksilver sued Reliant Energy Services, Inc., seeking to enforce the following provision in a contract between Quicksilver and Reliant:

From time to time, RES or Quicksilver may encounter opportunities for optimizing the value of this Gas supply. In those events, either party may propose a 50-50 profit sharing arrangement with the other party. Pursuant to such transactions, the parties may obtain incremental transportation to capture these opportunities, in which event the profits to be shared would take into account all costs and expenses associated with each transaction. 

Quicksilver Res., Inc. v. Reliant Energy Servs.
, Inc., No. 2-02-249-CV, 2003 WL 22211521, *1 (Tex. App.—Fort Worth 2003, no pet.).  This court held that the trial court correctly granted summary judgment for Reliant on Quicksilver’s claims under this contractual provision because the provision was discretionary, not mandatory. 
 Id. 
at *3.  This court specifically focused on the “may encounter,” “may propose,” “may obtain,” and “in which event” language in reaching this conclusion.  
Id.

CMS argues that our holding in Quicksilver’s suit against Reliant controls this suit by Quicksilver against CMS.  Specifically, CMS argues that (1) Quicksilver has judicially admitted “that the ‘upside sharing’ arrangements memorialized in the CMS contract and the Reliant contract were intended to be identical” and that (2) our decision in 
Quicksilver’s suit against Reliant collaterally estops Quicksilver’s suit in this case.  Quicksilver, on the other hand, argues that it did not judicially admit anything and that the doctrine of collateral estoppel is not applicable to a trial court judgment concerning a completely different contract involving different parties and different contractual language.  Quicksilver also argues in its second and third issues that the trial court erred by considering the Quicksilver-Reliant contract as summary judgment evidence in this case and that, at the most, the parol evidence merely raises a fact issue regarding the parties’ intent in entering the Quicksilver-CMS contract. 

CMS argues that Quicksilver’s CEO judicially admitted in his deposition “that the ‘upside sharing’ arrangements memorialized in the CMS contract and the Reliant contract were intended to be identical.”
(footnote: 3)  We agree that Quicksilver’s CEO testified that the upside sharing agreements in the Reliant contract and the present contract were 
intended
 to be identical, that is, to effectuate the same result.  But this testimony does not constitute a judicial admission that the contractual provisions 
are
 the same.  In fact, Quicksilver’s CEO expressly acknowledged that the two provisions were not the same; they used different words and language.  The testimony cited by CMS does not constitute a judicial admission that the upside sharing agreement in the CMS contract is identical to the upside sharing agreement in the Reliant contract.  
Accord Tex. Far West, Ltd. v. Tex. Invs. Mgmt., Inc.
, 127 S.W.3d 295, 308 (Tex. App.—Austin 2004, no pet.) (holding affiant’s statements did not qualify as judicial admissions or constitute conclusive evidence supporting summary judgment);  
United States Fid. & Guar. Co. v. Carr
, 242 S.W.2d 224, 228 (Tex. Civ. App.—San Antonio 1951, writ ref'd) (explaining that as a general rule “[m]ere testimony, though it come from a party, is not by intention an act of waiver . . . .  The testimony of parties to a suit must be regarded as evidence, not as facts admitted”).

Collateral estoppel applies to bar relitigation of identical issues of fact or of law.  
See, e.g., In re Calderon
, 96 S.W.3d 711, 720 (Tex. App.—Tyler 2003, orig. proceeding) (op. on reh’g).  In order to invoke collateral estoppel, a party must establish that  1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action, 2) those facts were essential to the judgment in the first action, and 3) the parties were cast as adversaries in the first action.  
Eagle Props., Ltd. v. Scharbauer
, 807 S.W.2d 714, 721 (Tex. 1990).  The issue litigated in Quicksilver’s suit against Reliant involved the specific clause in the contract between Quicksilver and Reliant.  Here, the issue involves a different contract with different provisions, including a different upside sharing clause, between Quicksilver and CMS.  Because the contracts were different and had different upside sharing provisions, the facts sought to be litigated here involving the Quicksilver-CMS contract were not, and could not have been, fully and fairly litigated in Quicksilver’s suit against Reliant.  We hold that collateral estoppel does not bar Quicksilver’s claims for breach of contract, breach of the UCC duties of good faith and fair dealing, or declaratory judgment.  We therefore likewise hold that the trial court erred by overruling Quicksilver’s objections to the Quicksilver-Reliant contract and related documents and by considering them as summary judgment evidence in this litigation.

B.  Parol Evidence—The Transcript of the March 26, 1999 Phone Conversation

Next, Quicksilver contends that the trial court erred by considering a transcription of the recorded March 26, 1999 phone conversation between CMS and Quicksilver as summary judgment evidence.  Quicksilver argues that the parties’ March 26, 1999 verbal agreement was supplanted by, and merged into, the parties’ written contract pursuant to the contract’s merger provision.   CMS, however, asserted in its amended motion for summary judgment that,

[t]his lawsuit involves the interpretation of a verbal contract in which CMS agreed to purchase natural gas from [Quicksilver] for a term of ten years at a fixed price of $2.47 per MMBTU.  Quicksilver alleges that a “special provision” contained in the written confirmation of that verbal contract requires CMS to pay Quicksilver half of any profits that it made, or potentially could have made, upon the resale of Quicksilver’s gas.

In this court, CMS likewise claims that “the rule of the marketplace confirms that this agreement was struck over the telephone and the terms of the deal are stated in the transcript.”

Thus, CMS argued that the parties’ contract was only a 
verbal
 contract and that despite the existence of a subsequent written contract containing a merger clause, the March 26, 1999 telephone conversation agreement was somehow independent of and not merged into the written contract.
(footnote: 4)  But Quicksilver did not sue CMS for breach of the alleged “verbal” agreement between the parties or for breach of the “written confirmation” of the telephone conversation.  Quicksilver sued CMS for breach of the upside sharing agreement set forth in the parties’ subsequent, signed, 
written
 contract, which contained a merger clause.

Michigan law clearly prohibits the introduction of parol evidence whether oral or written, which contradicts, varies or modifies an unambiguous writing intended as a final and complete expression of the agreement.  
See, e.g., Romska v. Opper
, 594 N.W.2d 853, 857 n.3 (Mich. Ct. App. 1999).  Thus, where two parties have entered into a written contract and have expressed their intention that the writing constitute the complete and accurate integration of that contract, such as when the parties use an explicit merger provision, parol evidence of previous or contemporaneous understandings and negotiations is not admissible for the purpose of varying or contradicting the writing.  
Michigan Nat’l Bank v. Laskowski
, 580 N.W.2d 8, 10 (Mich. Ct. App. 1998); 
UAW-GM Human Res. Ctr. v. KSL Recreation Corp.
, 579 N.W.2d 411, 418 (Mich. Ct. App. 1998).  There are only two very narrow exceptions to this rule:  fraud and the rare situation where a written document is obviously incomplete on its face.  
Michigan Nat’l Bank, 
580 N.W.2d at 10; 
UAW-GM, 
579 N.W.2d at 418.  
When parties include an integration or merger clause in their written contract, it is conclusive and parol evidence is not admissible except in cases of fraud that invalidate the integration agreement or where the contract is obviously not complete for “filling of gaps.”  
UAW-GM, 
579 N.W.2d at 418.  When a contract contains a merger clause, parol evidence is not admissible to show lack of integration of a prior verbal agreement. 
 Id.

Here, Quicksilver and CMS entered into a written contract and expressed their intention via the merger clause that the contract constitute the complete agreement between them, integrating any prior verbal agreement.  Consequently, Michigan law prohibits the introduction of oral or written parol evidence which contradicts, varies or modifies the written contract between Quicksilver and CMS.  
Michigan Nat’l Bank
, 580 N.W.2d at 10; 
UAW-GM, 
579 N.W.2d at 418.  Because the Quicksilver-CMS contract includes 
an integration or merger clause, it is conclusive and parol evidence is not admissible.  
UAW-GM, 
579 N.W.2d at 418; 
see also Fleet Bus. Credit, LLC, v. Kraphol Ford Lincoln Mercury Co.
, No. 249825, 2004 WL 2179235, *2 (Mich. Ct. App. Sept. 28, 2004) (unpublished opinion) (holding trial court erred by admitting parol evidence when contract contained merger provision).  Accordingly, we hold that under Michigan law parol evidence is not admissible to contradict, vary, or modify the terms of the parties’ written contract.

CMS based its motion for summary judgment on Quicksilver’s breach of contract claim solely on the verbal agreement between the parties, not the subsequent written contract.  Accordingly, CMS never argued in the trial court that the contract’s upside sharing agreement provision was ambiguous so that parol evidence could be introduced.
(footnote: 5)  Nonetheless, in its appellate brief and in a lengthy supplemental brief, CMS now argues that, under Michigan Uniform Commercial Code law, the trial court is required to consider the phone conversation as a circumstance surrounding the formation of the written contract that must be considered in interpreting the written contract regardless of whether the contract is ambiguous.
(footnote: 6)  We have reviewed the transcript of the March 26, 1999
 phone conversation and, even assuming that CMS had moved for summary judgment on the written contract, the transcript at most creates a fact issue as to the parties’ intent in entering the subsequent written contract.  It does not, as CMS argues, conclusively establish that CMS did not agree to the upside sharing agreement provision expressly set forth in the written contract CMS subsequently signed.  Consequently, even if the March 26, 1999 conversation may somehow be considered as proper summary judgment evidence, it merely raises a fact issue regarding the parties’ intent and does not entitle CMS to judgment as a matter of law.  Accordingly, we need not address whether Michigan Uniform Commercial Code law permits consideration of the March 26, 1999 phone conversation because this issue is not necessary to our disposition of this appeal.  
See
 
Tex. R. App. P.
 47.1.

CMS also argues on appeal that the written contract’s upside sharing agreement provision is “illusory,” “indefinite,” and “unenforceable.”  As we have explained, however, CMS moved for summary judgment solely based on the alleged verbal contract between the parties; CMS did not assert this ground for summary judgment in the trial court.  Accordingly, we cannot affirm the trial court’s summary judgment for CMS on this basis. 
Johnson v. Brewer & Pritchard, P.C.
, 73 S.W.3d 193, 204 (Tex. 2002) (holding that summary judgment cannot be granted except on grounds expressly presented in motion). Because the remaining summary judgment evidence viewed in the light most favorable to Quicksilver does not conclusively negate any element of Quicksilver’s breach of contract claim or breach of the UCC duties of good faith and fair dealing, we hold that the trial court erred by granting summary judgment for CMS on these claims and by granting CMS a declaratory judgment.
(footnote: 7)  We sustain Quicksilver’s first, second, third, and sixth issues.
(footnote: 8)
 C.  Fraud in the Inducement

As a general rule, an action for fraud in the inducement requires proof of the following elements:  (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages as a result.  
Hi-Way Motor Co. v. Int’l Harvester Co.
, 247 N.W.2d 813, 816 (Mich. 1976).  CMS claims that the March 26, 1999 phone conversation conclusively negates the detrimental reliance element of Quicksilver’s fraud in the inducement claim.  We cannot agree.  Quicksilver produced summary judgment evidence that, when taken as true and viewed in the light most favorable to Quicksilver, raises a genuine issue of material fact on detrimental reliance: specifically, the testimony of both Quicksilver’s President and Chairman of the Board that they would not have signed the contract had the upside sharing clause not conformed to their understanding that the parties would share equally any additional revenue derived from resale of the subject gas at prices above the $2.47 base price.  Accordingly, we sustain Quicksilver’s seventh issue.

D.  Unjust Enrichment

CMS’s motion for summary judgment addressed Quicksilver’s unjust enrichment claim in two sentences, as follows, “In this case, it is undisputed that there is a valid, express contract in place for the sale of gas by Quicksilver to CMS.  Quicksilver’s claim for unjust enrichment accordingly fails as a matter of law.” Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory.  
Fortune Prod. Co. v. Conoco, Inc.
, 52 S.W.3d 671, 684 (Tex. 2000); 
Atl. Lloyds Ins. Co. v. Butler
, 137 S.W.3d 199, 227 (Tex. App.—Houston [1st
 Dist.] 2004, pet.denied) (op. on reh’g).  When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.  
Atl. Lloyds Ins. Co.
, 137 S.W.3d at 227.  Because the summary judgment evidence conclusively established the existence of a valid, express written contract between Quicksilver and CMS, Quicksilver’s claim for unjust enrichment is precluded.  Accordingly, we hold that the trial court did not err by granting summary judgment for CMS on Quicksilver’s unjust enrichment claim.  We overrule Quicksilver’s fifth issue.  

E.  Recission

In its summary judgment motion, CMS claimed that it was entitled to judgment as a matter of law on Quicksilver’s recission claim because “a unilateral mistake does not provide grounds for [recission] even if this results in inequity to one of the parties.”  Generally, rescission of a contract will not lie except for mutual mistake or unilateral mistake induced by fraud.  
Windham v. Morris
, 121 N.W.2d 479, 481-82 (Mich. 1963).  Here, viewing the summary judgment evidence in the light most favorable to Quicksilver, a genuine issue of material fact exists concerning whether Quicksilver’s unilateral mistake concerning its possible profit under the upside sharing provision is based on CMS’s alleged fraud in failing to disclose that it intended to take financial hedges into account under that provision.  Thus, the trial court erred by granting summary judgment for CMS on Quicksilver’s recission claim. We sustain Quicksilver’s eighth issue.

V.  Conclusion

Having disposed of each of Quicksilver’s issues, we reverse the trial court’s summary judgment on Quicksilver’s claims for breach of contract, breach of the UCC duties of good faith and fair dealing, fraud in the inducement, recission, and declaratory judgment.  We remand these claims to the trial court.  We likewise reverse the trial court’s declaratory judgment for CMS.  We remand that claim to the trial court.  We affirm the trial court’s summary judgment for CMS on Quicksilver’s unjust enrichment claim.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: January 27, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Specifically, the merger clause provided the following: 

13.4  This Contract sets forth all understandings between the parties respecting each transaction subject hereto, and any prior contracts, understandings and representations, whether oral or written, relating to such transactions are merged into and superseded by this Contract and any effective Transaction Confirmation(s).  This Contract may be amended only by a writing executed by both parties.

3:
CMS points to the following testimony:

Q.  Is it—as I understand it, it’s Quicksilver’s position that the Reliant deal and the CMS deal were identical with respect to the upside sharing obligations?

A.  Yes, sir.

Q.  You are aware, are you not, that the language in the written confirmations differ substantially between those two deals?

A.  Yes, sir, they differ.

Q.  They differ?  There are different words used?

A.  That’s correct.

Q.  But it’s Quicksilver[‘s] position that the effect —that the deal was the same in both cases?

A.  The intent was the same in both cases.

Q.  The same deal?

A.  Yes, sir.

4:
CMS argued, “But Quicksilver overlooks the critical fact that the parties’ contract was a 
verbal
 agreement that was made over the telephone.”

5:
Indeed, CMS would not argue ambiguity because if the upside sharing provision is ambiguous or unclear the trier of fact is to determine the intent of the parties and summary judgment would be improper.  
See UAW-GM
, 579 N.W.2d at 414 (holding, “If the meaning of an agreement is ambiguous or unclear, the trier of fact is to determine the intent of the parties.”).  

6:
CMS cites some older Michigan case law from the 1970s on this issue; however, the more recent case law cited in this opinion is controlling.

7:
The trial court’s declaratory judgment provided that “CMS has not breached the gas purchase and sale agreement that is the subject of this lawsuit, and whose term is April 1, 1999 through March 31, 2009, and that CMS is not required to pay any money to Quicksilver for the remaining term of such agreement beyond the fixed price of $2.47 per MMBTU of natural gas.”

8:
Quicksilver’s sixth issue challenges the trial court’s summary judgment and declaratory judgment concerning CMS’s breach of the UCC duties of good faith and fair dealing.  We need not address the remainder of Quicksilver’s third issue or its fourth issue because Quicksilver raised these arguments in the alternative, in the event we did not sustain its first and second issues.  
See
 
Tex. R. App. P.
 47.1.