# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-20-00379-CV
NO. 03-20-00441-CV

---

**In re Julia Ellen Mathes**

---

ORIGINAL PROCEEDINGS FROM BELL COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Julia Ellen Mathes has filed two petitions for writ of mandamus. The first petition, docketed as cause number 03-20-00379-CV, complains of the Bell County district court's refusal to transfer the underlying suit affecting the parent-child relationship (SAPCR) to Rusk County, where Julia and her children with real party in interest Donald Mathes have lived for more than six months. The second, docketed as cause number 03-20-00441-CV, complains of the Bell County district court's temporary orders awarding Donald the right to designate the children's primary residence within Bell or Williamson counties. We conditionally grant mandamus relief. *See* Tex. R. App. P. 52.8(c).

## Procedural Summary

Donald and Julia have two children—son D.M., who was nine at the time of the hearing, and daughter M.M., who was four. In 2019, the Bell County district court signed an agreed divorce decree awarding Julia, who was then living in Rusk County, the right to designate

the children's primary residence. The children's primary residence was initially restricted to Rusk, Bell, and Williamson counties, but the decree ordered that the restriction would narrow to Bell and Williamson counties as of August 1, 2020. The agreed decree also provided that venue would "remain fixed in Bell County" and that the parties would not "attempt to change venue or jurisdiction."

In February 2020, Donald filed a motion asking the Bell County district court to confirm that he did not owe any child-support arrearage. Julia then filed a motion to transfer venue to Rusk County, where the children had lived for more than a year. In mid-March, she filed a petition to modify, seeking the removal of the geographic restriction and again seeking to have the proceeding transferred, and in April, she filed a motion for entry of a transfer order. The Bell County district court held a hearing in late May on Julia's motion to transfer but never issued an order. In July, Julia filed her first petition for writ of mandamus, complaining of the court's failure to transfer the proceeding. She also sought an emergency stay of the divorce decree's provision that required the children to move to Bell or Williamson counties by August 1. On July 28, we issued an order staying that portion of the decree.

Meanwhile, Donald filed his own petition to modify, seeking the right to designate the children's primary residence. The Bell County district court held a hearing and signed temporary orders on August 20, awarding Donald the right to designate the children's primary residence within Bell and Williamson counties. Julia then filed her second petition for writ of mandamus, complaining of the temporary orders.

**Denial of Motion to Transfer**

We first consider Julia's first petition, complaining of the denial of her motion to transfer venue. The family code provides that if a timely motion to transfer is filed and the opposing party does not file a controverting affidavit within twenty days of being served notice of the motion, the SAPCR "shall, not later than the 21st day after the final date of the period allowed for the filing of a controverting affidavit, be transferred without a hearing to the proper court." Tex. Fam. Code § 155.204(c), (d). "If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court *shall*, within the time required by Section 155.204, transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer." *Id.* § 155.201(b) (emphasis added). Mandamus relief is appropriate if a trial court does not perform a ministerial act or duty, and transfer of a SAPCR case under a mandatory venue provision is a mandatory ministerial duty. *See, e.g.*, *Proffer v. Yates*, 734 S.W.2d 671, 672-73 (Tex. 1987); *In re Rusch*, No. 03-18-00163-CV, 2018 WL 2123384, at *3 (Tex. App.—Austin May 9, 2018, orig. proceeding) (mem. op.). "Therefore, mandamus relief is available to compel mandatory transfer of a case to a county where the child has resided for more than six months." *Rusch*, 2018 WL 2123384, at *3.

Julia filed her motion to transfer after Donald filed a motion related to child-support arrearages. Donald responded in opposition to Julia's motion but did not file an affidavit controverting Julia's assertions related to venue. Instead, he averred that "[n]o motion for enforcement or motion to modify has been filed," that the divorce decree was both an order and "a contractual obligation" barring Julia from seeking to change venue, and that Donald believed Julia's motion was frivolous and had been brought in bad faith. Julia then filed a motion to

3

modify, seeking the removal of the geographical restrictions, and re-urged her motion to transfer. Donald filed another response in opposition, but again, neither his response nor the affidavit attached addressed Julia's venue-related allegations.

Donald asserts that the trial court did not abuse its discretion in failing to transfer the case to Rusk County because Julia contractually waived her rights to seek a transfer of venue and agreed to move the children back to Bell or Williamson counties.[1]  However, a mediated settlement agreement cannot supersede the family code's mandatory venue statutes.[2]  *See Leonard v. Paxson*, 654 S.W.2d 440, 441-42 (Tex. 1983); *In re Lovell-Osburn*, 448 S.W.3d 616, 622 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding); *In re Calderon*, 96 S.W.3d 711, 718-20 (Tex. App.—Tyler 2003, orig. proceeding); *Huckeby v. Lawdermilk*, 709 S.W.2d 331, 333 (Tex. App.—Eastland 1986, no writ).  As our sister court has explained:

[1] In his original response, Donald argued that the trial court had the discretion to withhold a ruling due to the ongoing COVID-19 pandemic, *see* Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9112, Supreme Court of Texas (Sept. 18, 2020) (courts may suspend deadlines "for a stated period ending no later than December 1, 2020").  However, he abandoned that argument in his amended response, and we note that the court does not appear to have stated that it was postponing a ruling for a "stated period."  Further, the court has held two hearings and issued temporary orders while the emergency orders were in effect, thus neutralizing any persuasive effect of that argument.

[2] Donald cites to *Huey v. Huey* for the proposition that Texas courts "have long recognized . . . that the matter of venue is a personal privilege that a party may expressly or impliedly waive." 200 S.W.3d 851, 853 (Tex. App.—Dallas 2006, no pet.).  However, in *Huey*, the court concluded that because the mother had moved to a county outside the divorce decree's geographical restrictions, thus violating the court order, she could not then rely on the mandatory venue provisions—"permitting appellant to obtain the benefit of an otherwise mandatory transfer based on the children's residence in Howard County, when such residence is solely the result of appellant's intentional disregard and violation of the divorce decree, would condone appellant's violation of the divorce decree and encourage others to do the same in similar circumstances," and "compelling a transfer on facts such as presented here would promote forum shopping." *Id*. The facts in *Huey* are distinguishable from the facts here, in which Julia did not violate the decree by moving to Rusk County and instead was living there at the time the decree was signed.

4

Under the holding in *Leonard*, any attempt to supplant the mandatory transfer provision applicable in a SAPCR is void. The term "void" means "of no legal effect" or "null." Therefore, the provision cannot be an effective contractual waiver of Calderon's right to the transfer required by section 155.201. Furthermore, a settlement agreement attempting to change venue contrary to the statutory law of the state cannot constitute a waiver of venue. In a SAPCR, venue is proper in the court of continuing jurisdiction unless a transfer is requested. If the child has resided in another county for more than six months and a motion to transfer is timely filed, the transfer of the proceeding is mandatory. The [mediated settlement agreement] provision contravenes this statutory scheme, and in so doing, "defeats the legislature's intent that matters affecting the parent-child relationship be heard in the county where the child resides. . . ." Consequently, we conclude that the [mediated settlement agreement] provision is not a valid express waiver of venue.

*Calderon*, 96 S.W.3d at 719-20 (citations omitted).

*Leonard* bars the parties' agreed divorce decree from defeating the family code's mandatory venue provisions. *See* 654 S.W.2d at 441-42 ("the mandatory venue and transfer provisions of the Family Code control and cannot be negated by contract"); *Calderon*, 96 S.W.3d at 719-20. The Bell County district court thus abused its discretion in not transferring the proceeding to Rusk County. *See Rusch*, 2018 WL 2123384, at *3.

## Primary Residence Determination

We next turn to Julia's second petition for writ of mandamus, challenging the Bell County district court's temporary orders, which were issued after we stayed the divorce decree's provision related to whether the children had to relocate from Rusk County.

As relevant here, while a suit for modification is pending, a court may not render temporary orders changing the person who has the exclusive right to designate the child's primary residence unless such a change is in the child's best interest and "the order is necessary because the child's present circumstances would significantly impair the child's physical health

5

or emotional development." Tex. Fam. Code § 156.006(b)(1). The "significant impairment" standard is a high one and requires evidence of bad acts beyond a violation of a divorce decree or a parent's attempts to alienate a child from the other parent. *See, e.g.*, *In re Coker*, No. 03-17-00862-CV, 2018 WL 700033, at *4 (Tex. App.—Austin Jan. 23, 2018, orig. proceeding) (mem. op.); *In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.). Mandamus is an appropriate remedy when a trial court abuses its discretion in issuing temporary orders in a SAPCR. *See, e.g.*, *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding); *In re Lewin*, 149 S.W.3d 727, 734 (Tex. App.—Austin 2004, orig. proceeding); *In re Vernor*, 94 S.W.3d 201, 209-10 (Tex. App.—Austin 2002, orig. proceeding). In considering Julia's petition, we must review whether the court had sufficient evidence on which to render the temporary orders changing the parent with the right to designate the children's primary residence.[3]

Donald testified that he has remarried, that he and his new wife have a son, and that D.M. and M.M. have a close bond with him, their stepmother, and their half-brother. Donald further testified that when Natalie Lenard, the children's therapist in Round Rock, indicated that D.M. "had been or suffering from a series of emotional outbursts, including anger and frustration" related to his relationship with Julia, it confirmed Donald's fears. Donald also said that notes from Daniel Cabrera, the children's therapist in east Texas, indicated that D.M.'s

---

[3] "During the transfer of a suit from a court with continuing, exclusive jurisdiction, the transferring court retains jurisdiction to render temporary orders," and the transferring court's jurisdiction "terminates on the docketing of the case in the transferee court." Tex. Fam. Code § 155.005; *see In re Estes*, No. 07-17-00225-CV, 2017 WL 3122359, at *3 (Tex. App.—Amarillo July 19, 2017, orig. proceeding) (mem. op.) ("A mandatory duty to do something is not the functional equivalent of actually doing that thing. Therefore, because the trial court never entered an order transferring venue, . . . [the trial court] retained jurisdiction to enter temporary orders in accordance with the provisions of the Texas Family Code.").

suffering "had gotten worse" over the last year.  Donald, however, had not seen any reason for concern when the children were with him for summer visitation.  Instead, he said, the children behave "[l]ike kids.  They run around, have fun, laughing, you know, just getting a chance to be kids and be themselves."

Donald testified that he was concerned "about parental alienation" and that he had a list of more than 150 instances in which Julia denied him telephone or electronic access to the children.  When asked on cross-examination about M.M.'s distraction during phone calls or her outright refusal to get on the phone with him, Donald blamed Julia and said M.M. did not behave like that when she was in Donald's house and had to talk to Julia.  He sometimes heard Julia tell the children to end their phone calls with him, testifying that the night before the hearing, he heard her tell D.M. to get off the phone after less than three minutes.  He also expressed concerns about Julia's attempts to change D.M.'s nickname and testified that Julia agreed in July 2020 to start co-parenting therapy but had since ignored his messages about it.

Donald thought it was in the children's best interest to live with him and his wife because Julia has given the children the message that "they're not supposed to enjoy their time with us."  Instead, he said, "they feel like they're torn because if they have fun with us it's them disobeying their mom.  And they feel like they have to choose between one of us. . . . It forces them into a position they shouldn't have to be in."  Donald believed the children had "[a]bsolutely" suffered significant emotional harm due to Julia's behavior.

Lenard testified that she had been the children's therapist since the spring of 2019.[4]  She had seen the children interact with their father, stepmother, and half-brother, and she

---

[4] Lenard testified at the May hearing, and the parties referred to her testimony and her report in the August hearing.

testified that they were very open, loving, and affectionate with Donald and their stepmother. Lenard had not seen them interact with Julia and had only spoken to Julia once or twice. Lenard also said she had not been able to review any notes or records from Cabrera because she had not gotten a release from Julia. Lenard had diagnosed D.M. with "adjustment disorder with mixed anxiety and depression" and "child affected by parent relationship distress." She said D.M. was "very withdrawn and very closed off" at the beginning of therapy and did not like to discuss his feelings about his parents and their divorce. Lenard was working with him on self-advocacy, self-esteem, healthy boundaries, and learning to be a child because he "is a little parentified" with regard to M.M. Lenard testified that D.M. had indicated "that he feels he's not supposed to have a good relationship with his father and especially with his stepmother" and said:

> I'm concerned about the messages that he gets. I'm concerned about his ability to voice the conflict that he's feeling because you can tell he's feeling some loyalty binds. He's feeling, you know, pushed in different directions. He feels he has to pick one parent over the other, but he doesn't know how to say that. And I'm concerned that it's going to continue and it's going to increase his anxiety, it's going to increase some of the symptoms of depression I see in him.

Lenard had diagnosed M.M. with "adjustment disorder unspecified" and "child affected by parent relationship distress," explaining that M.M. "is struggling with the conflict" between her parents. M.M. is "more happy-go-lucky" than D.M., but she will "close off a little bit" when she talks about her family. Lenard testified about a recent incident during therapy in which M.M. drew her family, drawing herself, D.M., Donald, and Julia. She started to draw her stepmother but then started to erase it. Lenard told M.M. she could "draw whoever is in your family," and M.M. drew her stepmother and half-brother, but when Lenard asked what M.M. called her stepmother, M.M. said, "I'm not allowed to call her mama." She then laid down on

8

the floor, curled up, and cried a little bit. Lenard said this concerned her "significantly" because, like D.M., "she's getting messages" and "feels that she's caught in a loyalty bind."

At the conclusion of the hearing, the trial court ruled that Donald's motion for temporary orders was "both procedurally and substantively sufficient to establish a basis for a change" of the right to designate primary residence. The court said that "this is a temporary order, but it is what I believe is in the best interest of the children at this time."

We have viewed the evidence in favor of the trial court's temporary order. *See Charles*, 2017 WL 5985524, at *4. Certainly the evidence, taking as true all of Donald's assertions and disregarding Julia's testimony to the contrary, shows that the children feel torn between their parents and unhappy about the divorce and that Julia has sent them messages, whether overtly or through non-verbal cues, that they should hold their stepmother at a distance. However, the evidence falls short of showing that Julia's alleged attempts to alienate the children from Donald were causing the children "significant impairment" and therefore cannot support the change of primary residence under section 156.006(b)(1). *See Coker*, 2018 WL 700033, at *5-6; *Charles*, 2017 WL 5985524, at *4. Further, the trial court did not find, either orally at the hearing or in its temporary orders, that the change was necessary because the children's emotional development was suffering significant impairment and instead referenced only the children's best interests, which is not the applicable standard at this stage of the proceeding. The trial court thus abused its discretion in rendering the temporary order naming Donald as the parent with the right to designate the children's primary residence, and Julia has no adequate remedy by appeal. *See Lewin*, 149 S.W.3d at 734.

9

## Conclusion

The Bell County district court abused its discretion in failing to grant Julia's motion to transfer under section 155.201 of the family code. It further abused its discretion in signing the temporary orders that awarded Donald the right to designate the children's primary residence. We conditionally grant mandamus relief and instruct the Bell County district court to vacate the temporary orders and issue an order transferring the SAPCR to Rusk County. Writ will issue only in the unlikely event the Bell County district court does not comply with this opinion.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Kelly

Filed: December 3, 2020