William M. CAYAN, Appellant,

v.

Amalia K. CAYAN, Appellee.

No. 14–99–00692–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 14, 2000.

Rehearing Overruled March 8, 2001.

---

Daryl L. Moore, Houston, for appellants.

Harry L. Tindall, Angela G. Pence, Heather H. Hughes, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and EDELMAN.

## O P I N I O N

RICHARD H. EDELMAN, Justice.

In this divorce case, William Cayan ("Bill") appeals a judgment in favor of Amalia Cayan ("Amy") on the grounds that the trial court erred in signing their divorce decree based on a mediated settlement agreement which Bill had repudiated because: (1) section 6.602 of the Texas Family Code does not create a procedural shortcut for enforcement of mediated settlement agreements; (2) a trial court is not required to enter judgment on a mediated settlement agreement merely because it technically complies with section 6.602; and (3) automatic enforcement of a mediated settlement agreement pursuant to section 6.602 violates the open courts and equal protection provisions of the Texas and United States Constitutions. We affirm.

## Background

After the parties filed for divorce in 1997, Amy hired Barbara McKittrick, a CPA, to assist her in identifying and valuing the assets and liabilities of the community estate and to advise her on the tax consequences of the settlement options. In December of 1998, the parties attended a mediation session and entered into a "Rule 11 Stipulation and Mediated Settlement Agreement" (the "agreement") to divide the community assets and liabilities. Both parties and their attorneys signed the agreement, and on January 14, 1999, the associate judge of the trial court approved it. On February 16, Amy filed a motion for the court to sign and enter a final divorce decree based on the agreement. The motion was set for hearing on March 1, but Bill filed a motion that day to revoke the agreement, alleging error, mistake, and misrepresentation because he had entered into it based upon McKittrick's incorrect characterizations of his retirement benefits. After a brief hearing, the District Judge signed Amy's proposed final decree (the "decree") on March 1.

## Jurisdiction

As a preliminary matter, we address Bill's contention that the decree is void because it recites that judgment was rendered in "Houston, Harris County," rather than Fort Bend County, where the case was filed.[1] Following oral argument in this appeal, a nunc pro tunc decree was signed by the trial court reflecting that judgment was rendered in "Richmond, Fort Bend County." Findings of fact were also filed which stated, among other things, that the divorce was actually rendered in Fort Bend County, that the presiding judge and associate judge were physically sitting in Fort Bend County on both January 14 and March 1, 1999, and that the recitation in the decree that the divorce had been rendered in Harris County was a clerical error.

Because our record does not reflect that an appeal has been perfected from the nunc pro tunc decree, the propriety of its issuance is not before us. However, the trial court's finding of fact that no action was taken in Harris County, the accuracy of which is not disputed by the parties, is sufficient to overcome any jurisdictional issue based on the erroneous recitation in

1. *See DeShazo v. Hall,* 963 S.W.2d 958, 960 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (noting that any order based on proceedings conducted outside a court's geographic jurisdiction is void and that an appellate court has no jurisdiction to consider the merits of an appeal from such a void judgment).

the decree. Therefore, we turn to the merits of the appeal.

### Section 6.602

Bill's first point of error argues that because section 6.602 is silent regarding enforcement of mediated settlement agreements, the agreement in this case must be enforced in the same manner as any other written contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.071 (Vernon 1997). Bill thus asserts that following his revocation of the agreement Amy could enforce it only by amending her pleadings and suing for breach of contract. He further asserts that a trial court may enter judgment on such a repudiated settlement agreement only by way of a summary judgment proceeding or trial, neither of which occurred in this case.[2] Bill thus contends that when the Legislature enacted section 6.602, it did not create a procedural short-cut for enforcement of Rule 11 mediated settlement agreements in family law cases.

Bill's second point of error contends that if a trial court cannot reject a mediated settlement agreement that complies with section 6.602 (a "section 6.602 agreement"), then that section directly conflicts with: (1) the requirement under sections 7.002 and 7.006 of the Texas Family Code that a court find a property division to be "just and right" before approving it; (2) the portion of section 7.006 allowing parties to revise or repudiate a property division agreement until rendition of the divorce; and (3) article XVI, section 15 of the Texas Constitution, which prevents a trial court from divesting a spouse

of separate property. Bill's third point of error similarly asserts that if a trial court cannot reject a section 6.602 agreement, then that section also violates the open courts and equal protection clauses of the Texas Constitution.

With few exceptions, such as for lack of subject matter jurisdiction[3] or other fundamental error[4] not present here, a complaint, including a constitutional challenge, must be raised in the trial court to be preserved for appellate review. *See* TEX. R.APP. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993). In this case, because Bill failed to raise the contentions asserted in his second and third points of error in the trial court, those complaints present nothing for our review. However, as will be discussed with regard to Bill's first point of error, we do not believe that section 6.602 is in conflict with any of the statutory or constitutional provisions cited by Bill.

In a final decree of divorce, a trial court is generally required to order a division of the community and quasi-community property that the court deems "just and right." *See* TEX. FAM.CODE ANN. §§ 7.001, 7.002 (Vernon 1998 & Supp.2000). Where parties enter into an agreement concerning the division of their property, the agreement may be revised or repudiated before rendition of the divorce *"unless the agreement is binding under another rule of law." Id.* § 7.006(a) (emphasis added). If the court finds that the terms of a property division agreement are just and right, those terms are binding on the court; if not, the court may request the parties to submit a revised agreement or may set the

---

2. In support of this contention, Bill relies on *Padilla* and *Davis*. *See Padilla v. LaFrance*, 907 S.W.2d 454, 455–56 (Tex.1995); *Davis v. Wickham*, 917 S.W.2d 414, 416 (Tex.App.- Houston [14th Dist.] 1996, no writ). However, because those decisions did not address agreements meeting the requirements of section 153.0071 or 6.602 of the Family Code, they provide no guidance on the effect of those provisions.

3. *See, e.g., Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993).

4. *See Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982) ("Fundamental error survives today in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas.").

case for a contested hearing. *See id.* § 7.006(b), (c). Once a court renders judgment on a settlement agreement, consent to the agreement cannot be revoked. *See id.* § 7.006(a) (the agreement may be revised or repudiated before rendition of the divorce).

■ In contrast to the above provisions, section 6.602 provides that where a mediated settlement agreement meets its requirements:[5] (1) the agreement "is binding on the parties"; and (2) a party is "entitled to judgment on the ... agreement *notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.*" *Id.* § 6.602(b), (c) (emphasis added).[6] In construing this language, we presume the Legislature intended the plain meaning of its words. *See National Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). The plain meaning of section 6.602 could hardly be more clear: a section 6.602 agreement is binding, *i.e.,* irrevocable, and a party to one is entitled to judgment based on the agreement. Because section 7.006(a) expressly recognizes that a settlement agreement can be made binding before rendition of the divorce under another rule of law, and because section 6.602 expressly entitles a party to a section 6.602 agreement to judgment notwithstanding other law, we interpret section 6.602 simply as an exception to section 7.006(a) whereby parties to a divorce may elect to make their agreement binding as of the time of its execution rather than at the subsequent time the divorce is rendered. In addition to reflecting the plain meaning of section 6.602, this interpretation is indicated by other considerations as well.

■ First, the Legislature is presumed to have acted with knowledge of cases interpreting a statute. *See Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999). Therefore, when the Legislature amended section 6.602 in 1999, we presume that it was aware of the cases holding that judgments should be entered on settlement agreements which complied with section 153.0071 despite attempts by parties to withdraw their consent.[7]

■ Secondly, we presume the Legislature enacts statutes with knowledge of existing law. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990). We thus assume the Legislature enacted section 6.602 with knowledge of section 154.071 of the Civil Practice & Remedies Code which provides that a written settlement agreement is enforceable in the same manner as any other written contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.071 (Vernon 1997). Moreover, we do not lightly presume that the Legislature did a useless act. *See In re Missouri Pac. R.R. Co.,* 998 S.W.2d 212, 216 (Tex.1999). To adopt Bill's contention that section 6.602

---

**5.** At the time the agreement was executed in this case in 1998, the requirements of section 6.602 were that the agreement: (1) provided in a separate paragraph that the agreement was not subject to revocation; (2) was signed by each party to the agreement; and (3) was signed by the party's attorney, if any, who was present at the time the agreement was signed. There is no dispute in this case that the agreement met these requirements.

**6.** Prior to enactment of section 153.0071 in 1995, settlement agreements in family law cases were governed by Rule 11 of the Texas Rules of Civil Procedure, Chapter 154 of the Texas Civil Practice and Remedies Code, and general contract law. *See* Anne Turner Beletic, *Mediation and Defending or Attacking Mediated Settlement Agreements, in* 1 STATE BAR OF TEX. PROF. DEV. PROGRAM, MARRIAGE DISSOLUTION INSTITUTE K, K–1 (1998). From September 1, 1995 until August 31, 1997, section 153.0071(f) of the Texas Family Code applied to mediated settlement agreements in divorce proceedings. *See* Acts 1995, 74 th Leg., R.S., ch. 751, § 27, 1995 Tex. Gen. Laws 3888, 3899. Effective September 1, 1997, section 153.0071(f) was repealed and replaced with section 6.602. *See* Acts 1997, 75 th Leg. R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 31; Acts 1997, 75 th Leg., R.S., ch. 937, § 3, 1997 Tex. Gen. Laws 2941.

**7.** *See, e.g., Alvarez v. Reiser,* 958 S.W.2d 232, 233 (Tex.App.-Eastland 1997, pet. denied); *Spinks v. Spinks,* 939 S.W.2d 229, 230 (Tex. App.-Houston [1 st Dist.] 1997, no writ).

agreements are only enforceable in the same manner as other written contracts would render section 6.602 meaningless relative to section 154.071 and thus treat its enactment as a useless act.

Thirdly, the purpose of alternative dispute measures is to keep parties out of the courtroom. *See generally* George B. Murr, *In the Matter of Marriage of Ames and the Enforceability of Alternative Dispute Resolution Agreements: A Case for Reform*, 28 TEX. TECH L.REV. 31, 35 (1997). Where a mediated settlement agreement is not summarily enforceable, the trial court is then faced with litigating the merits of not only the original action but also the enforceability of the settlement agreement, thereby generating *more*, not less, litigation. *See id.* at 33–34. Enforcing mediated agreements as of the time they are entered rather than later also encourages parties to avail themselves of mediation by giving them greater assurance of a prompt and final resolution. Further, parties are more likely to mediate in good faith if they know their agreement will be enforced. *See id.* at 42. Therefore, effecting the plain meaning of section 6.602 is supported by public policy.

Thus, contrary to Bill's contentions, the language of section 6.602 reflects that when the Legislature enacted that section, it definitely and deliberately created a procedural shortcut for enforcement of mediated settlement agreements in divorce cases. Equally apparent is that section 6.602 does not conflict with, but is an exception to, section 7.006. We are similarly persuaded that section 6.602 is also

an exception to sections 7.001 and 7.006 in allowing a judgment to be entered on a section 6.602 agreement without a determination by the trial court that the terms of the agreement are just and right.[8] Importantly, however, section 6.602 cannot be imposed on parties against their wishes. Rather, they remain free to enter mediated settlement agreements that do not fall within section 6.602 and, in fact, must take affirmative steps to qualify for section 6.602 treatment.

Bill further complains that section 6.602 violates: (1) the constitutional prohibition against divesting a spouse of separate property; (2) the open courts provision of the Texas Constitution by depriving him of the common law defense of fraud in the inducement to avoid being divested of separate property under the agreement; and (3) constitutional equal protection rights in that litigants who mediate family law disputes are afforded less protection than other · litigants who file common law claims for fraud. We first note that the prohibition against divesting a spouse of separate property applies only to judicial, *i.e.*, unagreed, divestitures and does not restrict parties from dividing separate property by agreement. *See, e.g., Boyett v. Boyett*, 799 S.W.2d 360, 363 (Tex. App.—Houston [14th Dist.] 1990, no writ). In addition, as noted above, section 6.602 agreements operate differently from non-section 6.602 agreements only with regard to the *time* at which parties become irrevocably bound, not the *extent* to which they become bound. Once the point of becom-

---

8. To conclude that a section 6.602 agreement remains subject to a just and right determination by the trial court would suggest that the trial court retains discretion to reject such an agreement, request the parties to negotiate a different agreement and, if necessary, set the matter for hearing. *Cf.* TEX. FAM.CODE ANN. § 7.006(c) (Vernon 1998). This, too, would mean that section 6.602 has no meaning or effect relative to section 7.006 and that it's enactment was a useless act.

Similarly, in *Kasschau*, this court held that a trial court did not abuse its discretion in

failing to enforce a section 153.0071 agreement that was void because it contained an illegal provision. *See In re Kasschau*, 11 S.W.3d 305, 311 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Obviously, a court cannot construe a statute or a contract to impose or enforce an illegal obligation or otherwise compel an illegal act because the purpose of the legal system is to combat unlawfulness, not promote it. Because there is no such claim of illegality or the like in this case, the rationale of *Kasschau* does not bear on our disposition.

ing bound is reached, a party is no more deprived of their rights to open courts or equal protection by section 6.602 agreements than non-section 6.602 agreements.

In any event, neither the open courts nor equal protection provision prevents a party from waiving a procedural or substantive claim by agreement (or inadvertence). In this case, the consequences of entering into a section 6.602 agreement are unequivocally stated on the face of both the statute and a section 6.602 agreement. If a party fails to exercise diligence in investigating facts or law or otherwise enters into a section 6.602 agreement inadvisedly, he will not be rewarded for doing so with a reprieve from the agreement. Conversely, if a party is wrongfully induced to enter into a section 6.602 agreement, he has the same recourse as one who discovered such a circumstance after judgment was entered on a non-section 6.602 agreement.

Because the agreement in this case complied with section 6.602, the trial court was required to enter judgment on it despite Bill's attempted repudiation. Accordingly, we overrule Bill's points of error and affirm the judgment of the trial court.