NO. 12-04-00029-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
PEGGY DOMANGUE,                                      §                 APPEAL FROM THE 307TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

CHARLES DOMANGUE,
APPELLEE                                                        §                 GREGG COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Peggy Domangue appeals the trial court’s entry of a final divorce decree. Peggy
raises three issues on appeal. We affirm.
 
Background
            Charles Domangue filed for divorce on May 1, 2003, and Peggy answered and filed a
counter-petition for divorce. The parties participated in mediation that occurred on September 23.
Peggy, Charles, and their respective attorneys signed a mediated settlement agreement that
determined divisions of, among others, real and personal property, liabilities, proceeds from the sale
of stock, and attorney’s fees and costs. Above the signature lines, the document contained a
provision that stated, in capital letters, boldface type, and underlined, “This agreement is not subject
to revocation.” 
            At the final hearing, Charles asked that the trial court follow the mediated settlement
agreement and award the property as agreed. Peggy requested that the trial court overturn the
mediated settlement agreement because she was incompetent at the time of the mediation. More
specifically, Peggy contended that she was incompetent as a result of her health condition, i.e.,
hepatitis-C and the side effects of her medication. At the conclusion of the hearing, the trial court
granted the parties a divorce and found that Peggy was represented by competent counsel, that the
mediator was competent and fair, and that the mediated settlement agreement should be enforced.
The trial court signed a final decree of divorce that, it stated, represented a merger of the mediated
settlement agreement. 
            On December 2, Peggy filed a motion for new trial, arguing that at the time the mediated
settlement agreement was reached, she was incapable of making an informed, intelligent decision
based on her health condition and medication regime. Further, she contended that the division of
property was inequitable and unjust. After a hearing, the trial court denied Peggy’s motion for new
trial. This appeal followed.
 
Repudiation of A Mediated Settlement Agreement
            In her first issue, Peggy argues that the trial court erred by not allowing her to repudiate the
mediated settlement agreement. Charles disagrees.
            In a final decree of divorce, a trial court is generally required to order a division of
community property and quasi-community property that the trial court deems “just and right.” See
Tex. Fam. Code Ann. §§ 7.001, 7.002 (Vernon 1998 & Supp. 2004-05); Cayan v. Cayan, 38
S.W.3d 161, 164 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). Where parties enter into an
agreement concerning the division of their property, the agreement may be revised or repudiated
before rendition of the divorce unless the agreement is binding under another rule of law. See Tex.
Fam. Code Ann. § 7.006(a) (Vernon 1998); Cayan, 38 S.W.3d at164. If the trial court finds that
the terms of a property division agreement are just and right, those terms are binding on the court;
if not, the court may request the parties to submit a revised agreement or may set the case for a
contested hearing. See Tex. Fam. Code Ann. § 7.006(b), (c ) (Vernon 1998); Cayan, 38 S.W.3d
at 164-65. Once a trial court renders judgment on a settlement agreement, consent to the agreement
cannot be revoked. See Tex. Fam. Code Ann. § 7.006(a); Cayan, 38 S.W.3d at 165.
            Texas Family Code, section 6.602 serves as an exception to the aforementioned provisions.
See Cayan, 38 S.W.3d at166. Section 6.602 provides that a mediated settlement agreement is binding
on the parties if it (1) provides, in a prominently displayed statement that is in boldfaced type or
capital letters or underlined, that the agreement is not subject to revocation, (2) is signed by each party
to the agreement, and (3) is signed by the party’s attorney, if any, who is present at the time the
agreement is signed. See Tex. Fam. Code Ann. § 6.602(b) (Vernon Supp. 2004-05). If the mediated
settlement agreement meets such requirements, a party is entitled to judgment on the agreement
notwithstanding other rules of law. See Tex. Fam. Code Ann. § 6.602(c) (Vernon Supp. 2004-05). 
When the legislature enacted section 6.602, it definitely and deliberately created a procedural shortcut
for enforcement of mediated settlement agreements in divorce cases. Cayan, 38 S.W.3d at 166. 
            In the case at hand, the agreement was signed by Peggy, Charles, and their respective
attorneys. Furthermore, the agreement provided that it was “not subject to revocation.” The
statement that the agreement was not subject to revocation was prominently displayed beginning at
the top half of the fifth page of the document, just above where the parties and their respective
attorneys were to sign. Moreover, the statement was displayed in capital letters, boldfaced type, and
underlined. We conclude that the document meets the requirements of section 6.602. 
            However, Peggy argues that a court cannot render a consent judgment unless, at the time of
rendition, all parties consent to the underlying agreement. We do not disagree. Both parties to the
instant agreement were free to enter into a mediated settlement agreement not governed by section
6.602. See id. Moreover, section 6.602 cannot be imposed on parties against their wishes. See id.
Yet, when both parties and their respective attorneys signed the agreement, in which was prominently
displayed with three times the required emphasis, the words “[t]his agreement is not subject to
revocation,” they undertook the appropriate, affirmative steps to ensure that their agreement qualified
for section 6.602 treatment, notwithstanding other rules of law. See Tex. Fam. Code Ann. § 6.602(b),
(c).
            Moreover, Peggy contends that the mediated settlement agreement is governed by section
154.071 of the Texas Civil Practices and Remedies Code and section 153.007(d) of the Texas Family
Code. First, section 153.007(d) pertains to agreements concerning conservatorship, possession, and
access to a child and is not applicable in the case at hand. See Tex. Fam. Code Ann. § 153.007(d)
(Vernon 2002). Further, section 6.602 states that where an agreement meets the aforementioned
requirements, a party is entitled to judgment on the agreement “notwithstanding Rule 11, Texas Rules
of Civil Procedure, or another rule of law.” See Tex. Fam. Code Ann. § 6.602(c) (emphasis added). 
Such language has been held to preclude applicability of other statutes when interpreted in light of
Texas Family Code, section 153.0071, which contains identical language to section 6.602, but applies
in disputes concerning the parent-child relationship. See Alvarez v. Reiser, 958 S.W.2d 232, 234
(Tex. App.–Eastland 1997, pet. denied); compare Tex. Fam. Code Ann. § 153.0071(d) (Vernon
2002) with Tex. Fam. Code Ann. § 6.602. Thus, we conclude that the matter is not governed by
either section 154.071 of the Texas Civil Practices and Remedies Code or section 153.007 of the
Texas Family Code. Peggy’s first issue is overruled.
 
Decree of Divorce and Motion for New Trial
            In her second and third issues, Peggy contends that the trial court erred in granting a decree
of divorce and in failing to grant her motion for new trial because she did not have the mental capacity
to enter into the mediated settlement agreement. Moreover, she argues that the divorce decree is
invalid and void because there are differences in the property distribution and designation between
the mediated settlement agreement and the decree of divorce. Charles disagrees, contending that the
trial court was within its discretion when it assessed the credibility of Peggy’s testimony regarding
her incapacity. Further, he argues that Peggy failed to designate any specific differences in the
property distribution and designation in her brief nor did she raise the issue in her motion for new
trial. 
            Regarding Peggy’s claim of differences in property distribution and designation between the
mediated settlement agreement and the divorce decree, we note that a trial court has no authority to
enter a judgment that varies from the terms of a mediated settlement agreement. Garcia-Udall v.
Udall, 141 S.W.3d 323, 332 (Tex. App.–Dallas 2004, no pet.). In her motion for new trial, Peggy
alleged that the division of property was inequitable and unjust, not that there were differences
between the mediated settlement agreement and the divorce decree. In her appellate brief, Peggy
stated that the decree was “somewhat different from the express language” of the mediated settlement
agreement and later claimed that there were “significant differences in the property distribution and
designation.” However, Peggy did not elaborate on the differences in language or property
distribution and designation. We cannot see any differences other than that the more formal language
used in the divorce decree as compared to the mediated settlement agreement nor can we see any
differences in the property distribution and designation. Because Peggy failed to identify any
differences between the mediated settlement agreement and the divorce decree and we could not see
any such differences, we cannot say that the trial court entered a divorce decree that differed from the
mediated settlement agreement. Accordingly, we overrule Peggy’s second and third issues to the
extent they relate to her complaints regarding differences between the mediated settlement agreement
and divorce decree. 
            We next consider Peggy’s claim of incapacity during the mediation and her complaint that the
trial court erred in granting the divorce. The law presumes a person to be mentally competent and
casts upon the party alleging mental incompetence the burden of proving her contention. Hall v.
Hall, 352 S.W.2d 765, 767 (Tex. Civ. App.–Houston 1962, no writ); Weidner v. Marlin, No. 04-96-00160-CV, 1997 WL 531129, at *11 (Tex. App.–San Antonio 1997, no writ) (not designated for
publication). The issue as to whether Peggy did or did not have mental capacity is to be determined
as of the time of the execution of the mediated settlement agreement. See Hall, 352 S.W.2d at 767.
Moreover, the trial court, acting as fact finder, is the sole judge of the credibility of the witnesses and
the weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d 575, 580 (Tex.
App.–Houston [1st Dist.] 1997, pet. denied). Further, the trial court may take into consideration all
the facts and surrounding circumstances in connection with the testimony of each witness and accept
or reject all or any part of that testimony. Id. at 580-81. 
            At the final hearing, Peggy testified that she had hepatitis-C and experienced side-effects from
the medication, including severe depression, memory loss, and “brain fog,” i.e., “everything goes
black.” Peggy stated that she was suffering from these side effects at the time of the mediation, but
acknowledged that her former counsel was with her during the entire mediation. Peggy testified that
during the mediation, she continually stated that she was confused and did not understand. According
to Peggy, her son was allowed to try to explain the mediation, but Peggy stated that he did not
understand either. She testified that she cried during the mediation and declared that “it [was] not
right” and not what she wanted. Although she did not believe she was coerced, Peggy alleged that
her former counsel stated that she had “no other choice.” Peggy denied laughing and smiling as she
left the mediation. At the conclusion of the final hearing, the trial court found that both Peggy’s
former counsel and the mediator were competent.
            Even though Peggy’s testimony was uncontradicted, if it was unreasonable or incredible, or
its credibility was questionable, then such testimony only raised a fact issue to be determined by the
trier of fact. See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990). The
trial court could have reasonably concluded that Peggy’s testimony about her illness and the side-effects of her medication was unreasonable, incredible, or that its credibility was questionable. Thus,
the trial court did not have to accept her testimony even though it was not controverted. See Ragsdale,
801 S.W.2d at 882. Although the trial court did not expressly rule on Peggy’s mental incapacity, it
impliedly found that she did not overcome the presumption of capacity when it granted the divorce
and entered judgment on the mediated settlement agreement. See Hall, 352 S.W.2d at 767; Weidner,
1997 WL 531129, at *11. Because the trial court is the sole judge of Peggy’s credibility and the
weight to be given her testimony, we cannot say that the trial court erred when it impliedly found that
Peggy failed to overcome the presumption of competency. See Hall, 352 S.W.2d at 767; Nordstrom,
965 S.W.2d at 580; Weidner, 1997 WL 531129, at *11. Therefore, the trial court did not err when
it granted Peggy and Charles a divorce. Peggy’s second issue is overruled.
            Finally, we consider Peggy’s complaint that the trial court erred by not granting her motion
for new trial because she was mentally incapacitated during the mediation. A new trial may be
granted and judgment set aside for good cause, on motion or on the court’s own motion. Tex. R. Civ.
P. 320. The trial court’s action on a motion for new trial is governed by an abuse of discretion
standard. Smith v. Levine, 911 S.W.2d 427, 433 (Tex. App.–San Antonio 1995, writ denied). If
there is a claim of newly-discovered evidence, the movant must bring forward noncumulative
evidence of which she did not become aware, and could not with the exercise of diligence have
become aware, until after trial. Id. This newly-discovered evidence must be so material that it would
probably produce a different result. Id. 
            In addition to her testimony at the final hearing, Peggy testified at the hearing on her motion
for new trial regarding her mental incapacity during the mediation. Peggy stated that, the week
before, she learned that her liver was functioning and that the hepatitis-C viral load was so low that
it was not detectible. However, Peggy stated that her hemoglobin was at a dangerously low level that
caused a lack of oxygen to her brain. As a result, she testified that she becomes so fatigued that she
has to lie down and cannot think or communicate with others. Further, she stated that her platelets
were “low” and that she becomes confused and forgetful.
            Peggy’s additional testimony that her low hemoglobin caused a lack of oxygen to her brain
would have been only one factor in the trial court’s determination and not so material that
presentation of this evidence at another final hearing would probably change the result. See Smith,
911 S.W.2d at 433. Further, her testimony that she became fatigued, confused, and forgetful from
her illness and medication regime is cumulative of her testimony at the final hearing. Therefore, the
trial court did not abuse its discretion by denying Peggy’s motion for new trial. See id. Accordingly,
Peggy’s third issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered August 3, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)