In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00085-CV

                                                ______________________________

 

 

IN
THE MATTER OF THE MARRIAGE OF

DAPHNE ALLEN AND JAMES
ALLEN AND

IN THE INTEREST OF J.T.A.
AND K.R.A., MINOR CHILDREN

                                                                  

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                              Rusk County, Texas

                                                   Trial Court No. 2008-09-405-CCL

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            This appeal
arises from the trial court’s property division in the divorce proceeding
between Daphne Allen and James Allen. 
James contends that a mediator attempted to act as an arbitrator without
an agreement for binding arbitration and, consequently, the trial court erred
in dividing the marital property as found by the mediator.  We disagree with James’ contention that
arbitration occurred.  Rather, pursuant
to a binding mediation settlement agreement, the mediator was called upon to
resolve a factual dispute concerning the scope of the mediation.  We affirm the trial court’s judgment.  

I.         Factual and Procedural Background

 

            On April 24,
2009, the Allens entered into a mediation settlement agreement (MSA) resulting
in settlement regarding the division of property.  With regard to the marital residence, the
agreement stated:

The
marital residence real property and all improvements located thereon shall be
partitioned pursuant to the map attached hereto as Exhibit “B” and incorporated
by reference for all purposes. Wife shall receive the property marked in RED
and Husband shall receive the property marked in YELLOW.  Wife shall grant Husband a perpetual easement
of ingress and egress as set forth on Exhibit “B” and marked in
BLUE/GREEN.  

 

A map of the property with such markings purporting to divide
the property by agreement was attached to the MSA as Exhibit B.  For clarity, we summarize Exhibit B in visual
form below. 



            

            In boldface
type, the MSA, signed by both parties and their counsel, recited that it
was  “binding on the parties,” “and not
subject to revocation, repudiation or withdrawal of consent.”  It further stated, 

[e]ach
party stipulates and agrees that he and she have been cautioned to read this
entire document word-for-word and to ask questions he or she may have about
this Agreement to his or her respective attorneys . . . each party stipulates
and represents to the other and to their attorneys that:  (a) each is signing this Agreement only after
having read this entire document carefully, word-for-word; (b) each has been
afforded an opportunity to ask any questions he or she may have about this
Agreement of his or her lawyer outside the presence of the mediator and the
other party, and each is completely satisfied with the legal representation he
and she have received today.

 




 

The MSA provided “that the mediator, Karen
D. Bishop, would be the “sole arbiter of any disagreement with regard to the
drafting and intent of the final documents to effectuate this Agreement.”  The trial court was presented with the MSA at
a hearing in which Daphne suggested that the agreement covered division of all
property.  

            After the
execution of the MSA, a dispute arose regarding the fifty-nine-acre tract of
land included within Exhibit “B” of the MSA, but not specifically designated as
the property of either party on the Exhibit. 
The dispute was decided by Bishop,[1]
who made the following finding:

It
is my belief that the parties intended to divide ALL of the realty
of the community estate.  It is also my
belief that the parties understood that the boundary lines as represented on
Exhibit “B” were, in fact, the correct boundary lines of the realty in
question.  In other words, Daphne Allen
was to receive the property to the south and James Allen the property to the
North.  Therefore, I am extending the
north boundary line of Daphne Allen’s tract to the far west.  I am ruling that Daphne Allen is awarded that
portion of the undivided tract of land west of the current west boundary line
and south of the current north boundary lines of Daphne Allen’s property as set
forth on Exhibit “B.”  James Allen is
awarded that portion of the undivided tract that is located west of the current
west boundary line and north of the current south boundary line of James Allen’s
property as set forth on Exhibit “B.” . . . . I am basing my rulings on the
discussions that took place at mediation on April 24, 2009, and the
representations of the parties on that date. 

 




 

A visual representation of her ruling is depicted below:

 



            

            After Bishop’s
finding, James filed a motion to vacate the “arbitration award,”[2]
arguing that it was obtained by corruption, fraud, or other undue means, and
that there was no agreement to arbitrate. 
The trial court set the matter for hearing. 

            At the
hearing regarding the dispute, James contended that he signed the MSA because
his attorney represented to him that he would be awarded all fifty-nine acres
of the disputed property.  James
explained that he attended the mediation over the telephone, received Exhibit B
via facsimile, and was not able to see the color coding dividing the
property.  James testified that he
expressed concerns regarding the property division to his attorney during the
mediation and had faxed Exhibit B back to his attorney with markings indicating
his intent to claim the entire fifty-nine acres.  James’ drawing, marked Exhibit C,[3]
was not attached to the MSA, and James acknowledged that he signed the MSA
knowing Exhibit B, not Exhibit C, was attached. 
James also initialed Exhibit B. 

            Daphne
testified that the mediation was intended to divide all of the marital
property, that the fifty-nine acres had been discussed, that she was consistent
in her assertions seeking the front half of the fifty-nine acres, and that she
understood the mediation awarded her the front half of the fifty-nine
acres.  Her understanding of what
constituted the “front half” was based on the location of a fence line
indicated on Exhibit B.  The map contains
a notation “Fence Line Just Beyond 2nd Pond And Includes Hay Field But Not
Alfalfa Field.”  Because the front half
of the disputed property is a hay field, and because the fence line continued
across the entire length of the undivided acreage, Daphne believed it had been
awarded to her during the mediation.  Her
belief that the disputed property had been divided also rested on the fact that
the access easement was actually a roadbed located in the middle of the
fifty-nine-acre tract.  However, although
she claims she did not realize it, Daphne admitted that Exhibit B failed to
outline any division of the fifty-nine acres. 


            At
the conclusion of testimony taken at the hearing, an argument was made that
Bishop, as  “sole arbiter of any
disagreement with regard to the drafting and intent of the final documents to
effectuate this Agreement,” had already decided the division of the fifty-nine-acre
tract.  The trial judge determined “that
the parties agreements included arbitration by Karen Bishop to be binding,
therefore, pursuant to the Texas Family Code Section 6.601(b)[4]
the court will enter an order reflecting the arbiter’s award.”  Thereafter, James moved the trial court to
enter a final decree of divorce.  During
the divorce hearing, James testified he had hired surveyors to draw boundary
lines and create metes and bounds descriptions of the property divisions as set
forth in Bishop’s findings.[5]  By the time of the divorce hearing, James
acknowledged that the survey was prepared in accordance with the MSA, including
Bishop’s finding concerning the fifty-nine-acre tract.  James asked the court to enter a final decree
following the survey and Bishop’s division of property.  He agreed there was an established fence
line.  In accordance with James’
testimony, the trial court entered a final decree of divorce, which was “stipulated
to represent a merger of a mediation agreement between the parties.”  The final decree’s “just and right division”
of the tract was in accordance with Bishop’s findings.”  The trial court’s final decree, including
property division accepting the division of the fifty-nine acres, was prepared
by James.  However, the trial court
accepted Daphne’s surveys, providing metes and bounds descriptions of Daphne’s
and James’ tracts, conducted after another, unrelated dispute arose regarding
the angle at which the fence line was drawn.[6]   

            The
trial court did not order arbitration, and the record does not reflect entry of
an order returning the parties to Bishop to resolve the dispute over the fifty-nine
acres.  Thus, it is possible James
voluntarily agreed to have Bishop decide the dispute, and then filed a motion
to vacate Bishop’s findings after notification of the resolution.  James now argues that the trial court erred
in concluding that the parties entered into binding arbitration because the MSA
“did not provide for binding post-mediation arbitration by the same mediator as
to issues other than drafting disputes.” 
Daphne argues that the trial court’s finding that the MSA agreements
included arbitration “was unnecessary, since they [sic] parties had already
submitted their differences to arbitration, evidently by agreement.”  

 

 

 

 

 

 

 

 

II.       There Was No Binding Arbitration in this
Case 

 

            We first note that no binding
arbitration took place in this case.[7]  Tex.
Fam. Code Ann. § 6.601.  The
parties agreed to mediation, not binding arbitration.[8]  Tex.
Fam. Code Ann. § 6.602 (Vernon 2006). 
Rather, the parties had entered into a binding mediation settlement
agreement.  Section 6.602 of the Texas
Family Code states:

(b) A mediated settlement agreement is
binding on the parties if the agreement:

 

            (1)
provides, in a prominently displayed statement that is in boldfaced type or
capital letters or underlined, that the agreement is not subject to revocation;

 

            (2)
is signed by each party to the agreement; and

 

            (3)
is signed by the party’s attorney, if any, who is present at the time the
agreement is signed.

 

(c)
If a mediated settlement agreement meets the requirements of this section, a party
is entitled to judgment on the mediated settlement agreement notwithstanding
Rule 11, Texas Rules of Civil Procedure, or another rule of law.

 

Tex. Fam. Code Ann.
§ 6.602(b), (c).  

 

            Because the
MSA, signed by each party and their attorney, stated in boldface type that the
MSA was “binding on the parties,” “and not subject to revocation, repudiation
or withdrawal of consent,” Daphne was entitled to judgment on the MSA.  The question in this case was the scope of
the MSA.  

 

III.      Per the MSA, Bishop Was Granted Authority to
Resolve the Dispute

 

            James
argues that the trial court erred in holding Bishop had the authority to decide
division of the fifty-nine acres.  The
MSA provided that Karen D. Bishop would be the “sole arbiter of any disagreement
with regard to the drafting and intent of the final documents to effectuate
this Agreement.”[9]  In this case, there does not appear to be a
factual dispute.  Both Daphne and James
testified the MSA was intended to dispose of the fifty-nine acres, and both
believed that the MSA had divided the property. 
Specifically, direct examination of James produced the following:

Q         Now,
you went to mediation also back on April 24th and you had Cary Crump as your
lawyer at that time; correct?

 

A         Yes,
ma’am. 

 

Q         And
in that mediated settlement agreement there was -- there’s some property
included in that; correct?

 

A         Yes,
ma’am. 

 

Q         Some
real property?

 

A         Yes,
ma’am. 

 

Q         And
that’s what the issue is today, correct?

 

A         Yes,
ma’am . . . . 

 

Q         And
you were given -- you agree that you were given the property outlined in
yellow?

A         Yes,
ma’am.

 

Q         Correct?
 And you agree she could also have the
property outlined in red?

 

A         Yes,
ma’am . . . . 

 

Q         Okay.  It’s -- how many acres is that?

 

A         Fifty-nine.


 

Q         And
that’s not included in any of these outlines; correct?

 

A         Not
in any of those outlines, no. 

 

Q         Now,
you signed off on this mediated settlement agreement?

 

A         I
did. 

 

Q         Your
signatures are on this last page?

 

A         Yes,
ma’am. 

 

Q         Did
you know that this triangle was not outlined?

 

A         Yes,
ma’am.  I knew it was not outlined.  I stated it to Cary that it was not outlined.


 

Q         Okay. 
And what did you think was going to happen to this piece of property
after mediation?

 

A         He
told me that I would receive it because she had outlined the property that she
wanted. 

 

James also objected to the placement of the easement, an
easement which he would not have been granted had he been awarded the entire
fifty-nine acres.  Because both parties
acknowledged that division of the fifty-nine acres had been discussed during
the mediation, as evidenced in Bishop’s arbitration ruling stating the ruling
was based “on the discussions that took place at mediation on April 24, 2009,
and the representations of the parties on that date,” the MSA provided that
Bishop be the sole arbiter of “drafting and intent of the final documents”
regarding the fifty-nine acres. Bishop’s report recognizes the limitations of
her role and stated that she could resolve the fifty-nine-acre tract issue as
it involved the intent of the mediation document.  Bishop determined that the parties intended
to divide all realty and understood the boundary lines; she then explained the
boundaries as intended.  Her decision was
based on the discussions at the mediation and the representations of the
parties.  In essence, Bishop found the
division of the fifty-nine acres, as set out in her letter, was a part of the MSA
reached by the parties during the mediation session.  James’ briefing provides no authority
suggesting otherwise.[10]  In fact, he incorporated Bishop’s ruling when
conducting surveys of the property and asked the trial court to enter a final
decree of divorce dividing the property in accordance with the finding.  

            We find that
because Daphne was entitled to enforce the MSA, the trial court did not err in
finding that Bishop was authorized to decide the issue, to determine the intent
of the mediation document and to determine the manner in which the parties
intended to divide the fifty-nine acres in dispute. 

            For reasons
stated within, we overrule James’ sole point of error.  

 

IV.      CONCLUSION         

 

            We affirm the
trial court’s judgment enforcing the parties’ mediation settlement agreement. 

 

                                                                                                Jack
Carter

                                                                                                Justice

 

Date Submitted:          March
25, 2011

Date Decided:             March
30, 2011











[1]The
record does not indicate whether the parties were ordered to return to Bishop,
or whether they returned by agreement.  





[2]For
reasons discussed below, we disagree with James’ characterization of Bishop’s
fact-finding as a binding arbitration award. 





[3]Exhibit
C was a duplicate of Exhibit B, with one variation.  Where we have included the notation “Disputed
Property (not color coded),” James had written “59 That I Claime [sic].”  





[4]Section
6.601 of the Texas Family Code states:

 

(a)
On written agreement of the parties, the court may refer a suit for dissolution
of a marriage to arbitration. The agreement must state whether the arbitration
is binding or nonbinding. 

(b)
If the parties agree to binding arbitration, the court shall render an order
reflecting the arbitrator’s award.

 

Tex.
Fam. Code Ann. § 6.601 (Vernon 2006). 

 





[5]The
trial court entered an order reflecting Bishop’s findings on February 10, 2010,
and James’ survey was conducted on March 24, 2010. 

 





[6]The
access easement in favor of the property conveyed to James was also set forth
by metes and bounds description in a separate exhibit.  

 





[7]We
do not preclude the possibility of a MSA requiring binding arbitration as in In re Provine, 312 S.W.3d 824, 827
(Tex. App.—Houston [1st Dist.] 2009, no pet.). 

 





[8]As
explained below, any error in the trial court’s characterization of the nature
of the agreement was harmless.  





[9]This
does not equate with binding arbitration. 
In this case, the trial court was free to find the disputed property was
not included within the MSA, and therefore, could have rejected Bishop’s
finding that it was.  Thus, Bishop’s
determination was by no means binding. 





[10]Instead,
James’ authority argues on appeal that the trial court’s award was not just and
right.  However, Daphne was entitled to
enforce the MSA, in which the parties agreed to a property division.  “[S]ection 6.602 is also an exception to
sections 7.001 and 7.006 in allowing a judgment to be entered on a section
6.602 agreement without a determination by the trial court that the terms of
the agreement are just and right.”  Cayan v. Cayan, 38 S.W.3d 161, 166 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied).