**Opinion filed September 18, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00116-CV

_____

## IN THE MATTER OF THE MARRIAGE
## OF BILLY COPPEDGE AND LINDA COPPEDGE

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-132,867**

### M E M O R A N D U M   O P I N I O N

Billy Coppedge appeals the trial court's final decree of divorce in which the trial court dissolved his marriage to Linda Coppedge and divided the couple's assets based on a mediated settlement agreement signed by both parties. We affirm.

### I. *Background Facts*

Billy Coppedge (Appellant) and Linda Coppedge (Appellee) married on December 16, 1976. On January 20, 2012, Appellant filed a petition for divorce. In response, Appellee filed an answer and a counterpetition for divorce. After issuing temporary orders, the trial court referred the parties to mediation.

On February 14, 2013, the parties participated in a mediation conducted by the Honorable Stacy Trotter. The mediation resulted in a Mediated Settlement Agreement (MSA), which both parties and their attorneys signed.

A hearing to enter a divorce decree based on the MSA was originally scheduled for February 19, 2013. On that day, Appellant's attorney, Jason Schoel, asked the court for permission to withdraw from the case based on Appellant's sudden change of opinion regarding the MSA. Appellant told the court that he felt that he had been coerced into signing the MSA and wanted Schoel to withdraw from the case.

Schoel denied Appellant's allegations and stated that Appellant voluntarily signed the MSA. Schoel also stated that he and the mediator both explained to Appellant before Appellant signed the agreement that he could sign the MSA or take the case to court. The trial court granted Schoel's motion to withdraw and recessed the hearing until March 14, 2013.

Appellee next filed a motion to enforce the MSA and filed a motion to enter a decree of divorce based on the MSA. On March 14, 2013, the trial court conducted a hearing on the motion. At the hearing, Appellee testified that both she and Appellant received the full text of the MSA before they signed the agreement.

Appellant, represented by new counsel, asked the court not to enforce the MSA based on the fact that he did not understand the terms of the agreement at the time he signed it. Appellant admitted that he signed the MSA but claimed that the agreement contained no attachments or exhibits at the time. Appellant stated that his attorney did not explain the meaning of the MSA to him during mediation and did not tell him that he had the right to refuse to sign the agreement and proceed to trial. Appellant claimed that he only signed the MSA because his lawyer "threw it in front of [him] and said sign it."

Billy Don Coppedge Jr., the son of Appellant and Appellee, testified that he was not present at the parties' mediation but stated that his father called him shortly after the mediation concluded. During that conversation, Appellant explained the terms of the MSA to Billy. Appellant told Billy that he did not think the terms were fair but that the agreement was what he wanted. Based on this conversation, Billy believed that his father completely understood the terms of the MSA. Billy also stated that his father gave him no indication that he had been defrauded, cheated, or placed under duress during the mediation.

The trial court ultimately found that the MSA met the requirements of Section 6.602 of the Texas Family Code and, therefore, bound the parties and the court. *See* TEX. FAM. CODE ANN. § 6.602 (West 2006). The trial court also found that the MSA was not illegal and had not been procured by fraud, duress, or coercion. Based on these findings, the trial court granted Appellee's motion to enforce the MSA. The trial court later entered a final decree of divorce in which it dissolved the marriage of Appellant and Appellee and divided the parties' property based on the terms of the MSA.

## II. *Issue Presented*

In his first and second issues on appeal, Appellant argues that the MSA in this case is void and that the trial court abused its discretion when it based the final decree of divorce on the MSA. In his third issue, Appellant argues that the trial court abused its discretion when it failed to divide the marital estate in a just and right manner.

## III. *Standard of Review*

Whether a mediated settlement agreement complies with the statutory requirements of Section 6.602 of the Texas Family Code is a question of law and is subject to de novo review on appeal. *Boyd v. Boyd*, 67 S.W.3d 398, 404 (Tex. App.—Fort Worth 2002, no pet.). If a party moves to set aside a settlement

agreement for other reasons, such as fraud, coercion, or illegality, we review the trial court's decision to uphold the agreement for an abuse of discretion. *Mueller v. Mueller*, No. 01-11-00247-CV, 2012 WL 682285, at *3 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, pet. denied) (mem. op.).

IV. *Analysis*

A. *Compliance with Section 6.602 of the Family Code*

Appellant claims that the MSA does not fulfill the requirements of Section 6.602 because it was not signed by his current attorney. Appellant further claims that the MSA is void because he signed it under duress, undue influence, and coercion. Finally, Appellant claims that the MSA is illegal because it does not comply with TEX. R. CIV. P. 11.

Section 6.602 of the Texas Family Code provides a method whereby the parties to a divorce may elect to make their mediated settlement agreement binding at the time of its execution rather than at the time the divorce is rendered. *See* FAM. § 6.602; *Cayan v. Cayan*, 38 S.W.3d 161, 165 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Section 6.602(b) provides:

> A mediated settlement agreement is binding on the parties if the agreement:
>
> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

FAM. § 6.602(b). If a mediated settlement agreement meets the formal statutory requirements, a trial court may not go behind the signed agreement to evaluate its merits but must render judgment on the parties' agreement. *Milner v. Milner*, 361

4

S.W.3d 615, 616 (Tex. 2012). "The plain meaning of Section 6.602 could hardly be more clear: a Section 6.602 agreement is binding, i.e., irrevocable, and a party to one is entitled to judgment based on the agreement." *Cayan*, 38 S.W.3d at 165.

The MSA was signed by both parties to the agreement and their attorneys and contained the following statement prominently displayed in bold-faced capital letters: "**EACH PARTY AND THEIR RESPECTIVE COUNSEL FURTHER CONFIRM AND ACKNOWEDGE THAT <u>THIS AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS ENFORCEABLE IN THE SAME MANNER AS ANY WRITTEN CONTRACT . . . .</u>**" The fact that Appellant's current attorney did not sign the MSA has no bearing on whether the agreement complied with Section 6.602. Under Section 6.602(b)(3), a party's attorney must sign the mediated settlement agreement if the attorney "is present at the time the agreement is signed." FAM. § 6.602(b)(3); *see also In re Marriage of Joyner*, 196 S.W.3d 883, 889-890 (Tex. App.—Texarkana 2006, pet. denied). The fact that the attorney who represented Appellant at mediation was subsequently replaced by another attorney has no relevance to whether the MSA satisfied the requirements of Section 6.602. The MSA was signed by the attorney who represented Appellant at the time the MSA was executed. We hold that the MSA in this case met the requirements of Section 6.602.

### B. Validity of the MSA

Appellant claims that he signed only a blank piece of paper when he signed the MSA and that this proves that his signature was taken with fraudulent intention. At the hearing conducted on March 14, 2013, Appellant testified that he had almost no discussion with his attorney about the MSA, only "hit and misses" about the property covered by the agreement. Appellant stated that he did not understand the terms of the MSA and claimed that the first time he saw the agreement in full was after the mediation concluded.

5

A party who chooses to enter into a Section 6.602 mediated settlement agreement is expected to investigate the facts and law surrounding the agreement before signing it. *See Cayan*, 38 S.W.3d at 167 ("If a party fails to exercise diligence in investigating facts or law or otherwise enters into a Section 6.602 agreement inadvisedly, he will not be rewarded for doing so with a reprieve from the agreement."). Consequently, a party who enters into a valid Section 6.602 agreement is not allowed to later withdraw from the agreement based on claims that he did not fully understand the terms and effect of the document he signed. *See Levisay v. Ferguson*, No. 11-10-00343-CV, 2012 WL 5439258, at \*3 (Tex. App.—Eastland Nov. 1, 2012, no pet.) (mem. op.) (finding husband could not revoke his consent to mediated settlement agreement based on his failure to understand the agreement's effect).

Although Appellant claimed that his attorney failed to adequately explain the terms and effect of the MSA to him, the trial court was free to disbelieve his testimony in favor of the testimony of other witnesses who refuted Appellant's claims. *See Wright v. Wright*, 280 S.W.3d 901, 908 (Tex. App.—Eastland 2009, no pet.) (stating that the trial court, acting as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony). Even if Appellant failed to fully understand the MSA, his lack of understanding did not invalidate the agreement. *See Herszage v. Herszage*, No. 13-06-257-CV, 2007 WL 2323979, at \*6–8 (Tex. App.—Corpus Christi Aug. 16, 2007, no pet.) (mem. op.) (holding that wife's failure to adequately inspect agreement's terms did not invalidate the Section 6.602 agreement in that case because parties to a Section 6.602 agreement must protect themselves by reviewing the agreement before signing).

Appellant also claims that the MSA is void because he signed it under duress, undue influence, and coercion. Although a Section 6.602 mediated

settlement agreement is subject to revocation if it was procured by fraud, duress, or coercion, Appellant has failed to show that the MSA in this case was produced by any dishonest means. At the hearing conducted on March 14, 2013, Appellant did not present any evidence that he had been forced to do anything regarding the MSA. On appeal, Appellant provides no details as to how he was coerced into signing the MSA. Given Appellant's failure to explain the nature of his claims, we find that Appellant's claims of fraud, duress, and undue influence lack merit. *See Carson v. Carson*, No. 03-04-00521-CV, 2005 WL 2978343, at *1–2 (Tex. App.— Austin Nov. 4, 2005, no pet.) (mem. op.) (bare assertions of intimidation or coercion, particularly in cases where a party is represented by counsel during mediation, are insufficient to meet a party's burden of proof to establish that a Section 6.602 agreement is unenforceable).

Finally, Appellant claims that the MSA is illegal because it does not comply with TEX. R. CIV. P. 11. A Section 6.602 mediated settlement agreement is subject to revocation if it is illegal; however, Appellant's reliance on Rule 11 is misplaced. *See Milner*, 361 S.W.3d at 619. Section 6.602(c) specifically states that, if a mediated settlement agreement meets the requirements of Section 6.602, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." FAM. § 6.602(c); *see Levisay*, 2012 WL 5439258. The fact that the MSA in this case does not comply with Rule 11 does not make it illegal or unenforceable. *See* FAM. § 6.602(c).

Given our holding that the MSA (1) met the requirements of Section 6.602; (2) was not procured by fraud, duress, or coercion; and (3) is not illegal in nature, we conclude that the trial court did not abuse its discretion when it based the final decree of divorce on the MSA. In fact, the trial court was statutorily required to enforce the MSA. *See id.* § 6.602; *Joyner*, 196 S.W.3d 890–91 ("The court is not

7

allowed to modify Section 6.602 agreements as it sees fit, and it has no authority to enter a judgment that varies from their terms."). Accordingly, we overrule Appellant's first and second issues.

### C. *Division of Marital Estate*

By his third issue, Appellant argues that the trial court abused its discretion when it failed to divide the parties' property in a "just and right" manner. *See* FAM. § 7.001 (stating that, in a decree of divorce, a court shall order division of the parties' estate "in a manner that the court deems just and right, having due regard for the rights of each party"). Appellant's argument is without merit. Unlike other settlement agreements in family law, the trial court is not required to determine that the property division is "just and right" before it approves a Section 6.602 mediated settled agreement. *Milner*, 361 S.W.3d at 618; *Joyner*, 196 S.W.3d at 891; *Cayan*, 38 S.W.3d at 166. Because the trial court was not required to make such a determination, we hold that the trial court did not abuse its discretion when it based the final divorce decree on the MSA without first determining if the agreement represented a "just and right" division of the parties' property. We overrule Appellant's final issue.

### V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON
JUSTICE

September 18, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8