# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00020-CV

**Louisa Maria Tilleman, Appellant**

**v.**

**Matthew John Tilleman, Appellee**

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 24-0611-F395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal presents the following issue:  Did the parties' mediated settlement agreement (MSA) survive a dismissal without prejudice?  Appellant Louisa Maria Tilleman and appellee Matthew John Tilleman filed for divorce twice.[1]  During the first divorce suit, Louisa and Matthew signed an MSA and then jointly agreed to nonsuit without prejudice the pending proceeding.  Several months later, Matthew refiled for divorce and sought judgment on the MSA, which the trial court granted.  By a single issue, Louisa argues that the MSA was only intended to resolve the first divorce proceeding, and thus, the trial court erred by entering judgment on the MSA in the second divorce proceeding.  We affirm.

---

[1]  Because the parties share a last name, for clarity, we will refer to them by their first names.

## I. BACKGROUND

On January 26, 2023, Matthew filed for divorce and custody of the parties' child, D.T. (Damien).[2] On June 27, 2023, the parties and their attorneys signed an MSA purporting to resolve "all issues relating to" the proceeding. In bold lettering at both the beginning and end of the MSA was the following language: "**THIS MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION**." The MSA reflected that it was made pursuant to Sections 6.602 and 153.0071 of the Family Code. *See* Tex. Fam. Code § 6.602 (MSA provisions related to divorce); *id.* § 153.0071 (MSA provisions related to suits affecting parent-child relationship). Attached to the parties' MSA were two exhibits; one concerned the division of the parties' estate and the other concerned the care, custody, and support of Damien. The MSA also indicated that "[u]ntil such time as the final order in this Cause is entered and approved by the Court, the terms and provisions of this [MSA] . . . shall be enforceable as if they were directly ordered by the Court." Neither party sought to enforce the MSA during this initial divorce suit.

On August 10, 2023, the parties filed a joint notice of nonsuit. The trial court later signed an agreed order reflecting that the case was dismissed "without prejudice." But the parties' attempted reconciliation was not to be, and less than a year after the first proceeding was dismissed, Matthew filed a new petition for divorce and sought to enforce the parties' MSA. Louisa contested the enforcement of the MSA, arguing that it only applied to the first divorce suit and that she had revoked her consent to the MSA.

On September 16, 2024, the trial court signed an order granting Matthew's motion to enter and included findings of fact and conclusions of law in its order. As relevant here, the

---

[2] To protect the child's privacy, we refer to him by a pseudonym. *See* Tex. R. App. P. 9.8; Tex. Fam. Code § 109.002(d).

2

trial court found that the agreement met the statutory requirements of an MSA, that neither party had sought judgment on or to set aside the MSA in the prior proceeding, and that the parties, "through the agreed nonsuit of the First Divorce Suit, did not nullify or negate the enforceability of the MSA." The court concluded that Matthew was entitled to judgment on the MSA.

On December 13, 2024, the court signed a final decree of divorce that incorporated the terms of the MSA. Louisa appeals from that decree.

## II. MEDIATED SETTLEMENT AGREEMENT

By her sole issue on appeal, Louisa argues that the trial court erred by granting judgment in the second divorce suit on the MSA signed during the pendency of the first divorce suit.

### A. Standard of Review & Applicable Law

We review a trial court's decision to enter judgment on an MSA for an abuse of discretion. *In re Lee*, 411 S.W.3d 445, 458–59 (Tex. 2013) (orig. proceeding). A pending suit is not a prerequisite to a binding MSA. *Highsmith v. Highsmith*, 587 S.W.3d 771, 776 (Tex. 2019). Rather, to be binding, an MSA must: (1) prominently display on its face a statement that the agreement is not subject to revocation; (2) be signed by each party to the agreement; and (3) be signed by the party's attorney, if any, who is present at the time the agreement is signed. Tex. Fam. Code §§ 6.602(b), 153.0071(d). If a mediated settlement agreement meets these requirements, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* §§ 6.602(c), 153.0071(e). "A trial court generally does not have discretion to decline to enter judgment on or deviate from an MSA." *Scruggs v. Linn*, 443 S.W.3d 373, 378 (Tex. App.—

3

Houston [14th Dist.] 2014, no pet.). Indeed, the supreme court has described this as a "mandate," explaining that unless certain "narrow exception[s]" apply, a party is entitled to judgment on an MSA. *In re Lee*, 411 S.W.3d at 452.

"Because an MSA is a contract, we look to general contract-interpretation principles to determine its meaning." *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). The construction of a contract is a question of law we review de novo. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam). "When construing a contract, 'a court must ascertain the true intentions of the parties as expressed in the writing itself.'" *Id.* (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id.* (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). We also consider the context in which the words are used, avoid constructions that render provisions meaningless, and construe contract provisions together so as to give effect to the whole. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). And we must remain mindful that "[p]arties are free to draft novel contractual terms that produce results some may consider odd; a court's duty is to give effect to the parties' intent as expressed in the contract's language." *Id.*

**B.    Analysis**

Louisa does not contend that the MSA lacked any of the statutorily-required elements. Rather, she argues that the terms of the MSA were applicable only to the first suit. As support for this proposition, Louisa points to the following language in the MSA:

4

On June 27, 2023, the parties and their attorneys submitted issues relating to *this pending action* to mediation . . . . As a result of such mediation, the parties have agreed to settle all issues *relating to the above-numbered suit* according to the terms set out below . . . .

. . . .

Until such time as the final order *in this Cause* is entered and approved by the Court, the terms and provisions of this Mediated Settlement Agreement as agreed by the parties shall be enforceable as if they were directly ordered by the Court and shall supersede any Temporary Orders or other Mediated Settlement Agreements of the parties. The parties generally release each other from all other claims.

(Emphases added).

But in construing these provisions in context, we conclude that they do not demonstrate an intent to limit the scope of the MSA to the first suit. The MSA indicates that the parties wished to settle "all issues relating to" the initial proceeding, not just the initial proceeding itself. At the time the MSA was signed, "all issues relating to" the proceeding included the division of the marital estate and conservatorship, access, and support of Damien. Because the trial court dismissed the initial divorce without prejudice, those matters were still at issue in the second divorce suit, and the parties' agreement as to how those matters should be resolved was just as pertinent in the second proceeding as it was in the first.

Other provisions in the MSA also demonstrate that the parties intended their agreement to endure. For instance, the parties described the MSA as "irrevocable," agreed that it "shall serve as a present and future partition of the parties' community estate," and agreed that "[n]o community estate shall arise" after the execution of the MSA. *See Williams v. Finn*, No. 01-17-00476-CV, 2018 WL 5071196, at *5 (Tex. App.—Houston [1st Dist.] Oct. 18, 2018, pet. denied) (mem. op.) ("The agreement explicitly provided that it was effective on the day it

5

was signed, that it was a settlement of all of the parties' claims and disputes, and that it was irrevocable. Devinah's seeking judgment on the agreement in a new proceeding was consistent with the parties' stated intent.").

Though the parties agreed to limit the enforceability of the provisions of the MSA "as if they were directly ordered by the Court" until a final order was issued in the initial proceeding, this does not mean that the MSA did not survive the nonsuit in any capacity. MSAs are contracts, not court orders. *See Loya*, 526 S.W.3d at 451. Although we treat them as more binding than an ordinary written contract, *Cojocar v. Cojocar*, No. 03-14-00422-CV, 2016 WL 3390893, at \*4 (Tex. App.—Austin June 16, 2016, no pet.) (mem. op.), an MSA does not have the effect of a court order until it is incorporated into a court order, *see Spence v. Davis*, No. 03-22-00179-CV, 2023 WL 427063, at \*3 n.1 (Tex. App.—Austin Jan. 27, 2023, no pet.) (mem. op.). But, as stated above, parties are free to craft novel contract terms. *See Rosetta Res. Operating, LP*, 645 S.W.3d at 219. Here, the parties agreed that the MSA would be treated as a court order during the pendency of the first proceeding. Thus, the plain language of this provision limits the MSA's enforcement *as a court order* to the first divorce suit. But we are still left with the question of whether the MSA was enforceable *as an MSA* in the second proceeding.

To that end, MSAs are hardy creatures. *Cojocar*, 2016 WL 3390893, at \*4 ("[A]n MSA under section 6.602 is more binding than a basic written contract because nothing either party does will modify or void the agreement once the parties have signed it."). They remain enforceable in the face of a broad best-interest inquiry by the trial court, *In re Lee*, 411 S.W.3d at 455, the lack of a pending suit, *Highsmith*, 587 S.W.3d at 776, and even the parties' agreement to repudiate the MSA, *In re Minix*, 543 S.W.3d 446, 453 (Tex. App.—Houston [14th Dist.] 2018,

6

orig. proceeding [mand. denied]).  We have also held that an MSA survived a party's death, such that the decedent's estate was entitled to judgment on the MSA, *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied), notwithstanding the fact that a spouse's death immediately moots a pending divorce proceeding, *In re Marriage of Benavides*, 712 S.W.3d 561, 568 (Tex. 2025); *Whatley v. Bacon*, 649 S.W.2d 297, 299 (Tex. 1983) (orig. proceeding).  Consistent with this reasoning, we conclude that the parties' MSA survived the dismissal without prejudice.  *See Spiegel*, 228 S.W.3d at 242 ("[B]y providing that when an agreement meets the requirements of section 6.602, the agreement 'is binding' and 'a party is entitled to judgment' on it, the statute shows the legislature's intention that the agreement be binding even in the absence of a judgment incorporating it.").  Thus, the trial court did not abuse its discretion by entering judgment on the statutorily-compliant MSA pursuant to Matthew's request in the second proceeding.  *See Scruggs*, 443 S.W.3d at 378.

Since the parties filed their briefs in this case, two courts, including our own, have held that a party should seek judgment on an MSA executed during the pendency of a child custody proceeding while that proceeding is pending, or else they risk losing their right to judgment on the MSA.  *See In re B.W.A.*, --- S.W.3d ----, No. 03-25-00931-CV 2026 WL 917433, at *6 (Tex. App.—Austin Apr. 1, 2026, orig. proceeding) ("[S]ection 153.0071 did not empower the trial court to enter an order on an MSA after its plenary power had expired."); *In re C.T.H.*, --- S.W.3d ----, No. 05-22-01202-CV, 2025 WL 3285467, at *8 (Tex. App.—Dallas Nov. 25, 2025, pet. filed) ("When the plenary power of the trial court expired in the original case and Grandparents had done nothing with the MSA, the MSA simply evaporated.").

However, those cases are distinguishable from the one before us. Both involved final judgments on the merits of the claims brought in the initial proceeding. A dismissal without prejudice is a horse of a different color entirely. The Dallas Court of Appeals relied on principles of collateral estoppel and res judicata in concluding that the grandparents' attempt to enforce the MSA that was never incorporated was ineffective, specifically noting that "[a] collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently impedes." *In re C.T.H.*, 2025 WL 3285467, at *8. But when a case is dismissed without prejudice, principles of collateral estoppel and res judicata do not bar relitigation of claims or issues raised in the dismissed proceeding. *Sahagun v. Ibarra*, 90 S.W.3d 860, 863 (Tex. App.—San Antonio 2002, no pet.); *see Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) ("When a case is nonsuited without prejudice, res judicata does not bar relitigation of the same claims."). Neither is a party precluded from asserting claims that he could have raised in the dismissed proceeding but did not. *See Welch v. Hrabar*, 110 S.W.3d 601, 607 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Given that the trial court in the initial divorce suit dismissed the case "without prejudice," we cannot conclude that such a judgment prejudiced either party's ability to seek judgment on the MSA.

Similarly, in *B.W.A.*, we addressed whether an MSA that conferred standing to grandparents could be enforced in a subsequent proceeding brought years after the initial proceeding concluded. 2026 WL 917433, at *4. We noted that the initial proceeding resulted in a final adoption order that rendered the grandparents otherwise without standing to seek possession of the children. *Id.* (citing Tex. Fam. Code § 153.434 (providing that grandparents "may not request possession of or access to a grandchild" in certain circumstances)). Our decision in *B.W.A.* reflects similar jurisprudential concerns as those outlined in *C.T.H.*;

8

e.g., parties who receive a judgment on the merits that is not to their liking should challenge that judgment at a time when the trial court retains the power to correct it. *Cf.* Tex. Fam. Code § 162.012 ("the validity of an adoption order is not subject to attack after six months after the date the order was signed"). But our analysis in this case reflects a different jurisprudential principle: Dismissals without prejudice are, indeed, without prejudice.

We also find it noteworthy that the sole court to grapple with the issue of whether an MSA survives a dismissal without prejudice and implicitly conclude that it does is the same court that issued *In re C.T.H. See In re S.K.D.*, No. 05-11-00253-CV, 2014 WL 3058452, at *1–2 (Tex. App.—Dallas July 8, 2014, no pet.) (mem. op.) (MSA entered into in prior proceedings that were dismissed without prejudice should have been enforced in subsequent proceedings). Louisa contends that *In re S.K.D.* is distinguishable because the parties in that case did not clearly indicate their intent "that their mediated settlement agreement apply only to the then existing case." But, as we have already discussed, we see no clear indicia of such an intent in this case, either. Accordingly, our decision in this case is consistent with the holdings of *In re C.T.H.* and *In re B.W.A.*

Lastly, Louisa raises important public policy concerns, such as encouraging mediation and reconciliation, that she claims will be hampered by a "holding that parties are literally forever bound to decision to [an MSA]—despite their clear intention to abandon the underlying suit and reconcile their marriage." While we agree that these are noble policies, we do not agree that our decision hampers them. First, our decision should not be read in the broad manner Louisa posits. Rather, our decision is confined to the facts of the case before us, where the parties agreed that their MSA would resolve both present and future issues, the trial court

dismissed the original divorce suit without prejudice, and the parties' MSA did not specify the effect a dismissal without prejudice would have on the enforceability of the MSA.

Second, importantly, "the State's public policy is reflected in its statutes." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex. 2007) (quoting *Town of Flour Mound v. Stafford Ests. Ltd. P'ship*, 135 S.W.3d 620, 628 (Tex. 2004)). And Texas has prioritized the peaceful and binding resolution of issues affecting families. *See* Tex. Fam. Code §§ 6.602(c), 153.0071(e). The policy behind these statutes is to reduce the emotional and financial burden that drawn-out litigation may have on a family by facilitating the swift conclusion of these cases. *In re B.W.A.*, 2026 WL 917433, at \*6 (citing *In re C.T.H.*, 2025 WL 3285467, at \*8). When an MSA is not summarily enforced, "the trial court is then faced with litigating the merits of not only the original action but also the enforceability of the settlement agreement, thereby generating *more*, not less, litigation." *Spiegel*, 228 S.W.3d at 242 (quoting *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). Thus, we conclude that enforcement of the parties' MSA in this case does not violate public policy.

We overrule Louisa's sole issue on appeal.

### III.     CONCLUSION

We affirm the trial court's final decree of divorce.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed:   May 29, 2026